IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | |
| | ) | No. 33762-6-III |
| E. R. D. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

SIDDOWAY, J. — The mother of E.R.D. failed to appear at the time set for trial of a petition to terminate her parental rights and an order of default was entered. She was unable to provide the superior court with an address where notices of continued dates for a trial could reach her and she took no action to determine what was happening in the termination case. Three months after the trial was held and an order terminating her parental rights was entered, she moved to vacate the order of default and the judgment. Her motion was denied.

We find no abuse of discretion by the trial court and affirm.

FACTS AND PROCEDURAL BACKGROUND

The mother in this case adopted E.R.D. as a baby. E.R.D. came into the care of the Department of Social and Health Services (DSHS) after it had received and investigated four intakes alleging child abuse and neglect by the mother. In September 2012, after E.R.D. arrived at school wearing pajamas, with clothing in a bag and no

shoes, and school personnel were left to get her dressed, feed her, and get her to her classroom, DSHS began dependency proceedings. On March 26, 2013, the juvenile court entered an agreed order of dependency for then 8-year-old E.R.D., and she was placed in foster care.

At the time, the mother's identified parenting deficiencies included untreated substance abuse and untreated mental health issues. She was offered substance abuse treatment, mental health services, parenting services, and random urinalysis.

Sixteen months later, in July 2014, DSHS commenced parental termination proceedings. On August 21, 2014, after the mother's social worker, Maura Brown, had been unable to contact her despite multiple attempts, Ms. Brown traveled to a visitation center where she knew the mother was scheduled for visitation with E.R.D. E.R.D. and her mother were present. According to Ms. Brown, she served the mother in the hallway with a notice and summons for the termination trial that was scheduled for October 23, 2014, verbally told her of the trial date, and told her that she needed to contact her attorney.

The notice and summons served on the mother included the following language:

> 3.6   YOU ARE <u>NOT</u> REPRESENTED BY A LAWYER IN THIS
> TERMINATION PROCEEDING EVEN IF YOU WERE
> APPOINTED A LAWYER IN THE PRIOR DEPENDENCY
> CASE. YOU MUST REAPPLY FOR APPOINTMENT OF A
> LAWYER IN THIS CASE. IF YOU OR A LAWYER ON YOUR
> BEHALF DOES NOT APPEAR IN THIS CASE, YOU WILL BE

No. 33762-6-III
*In re Parental Rights to E.R.D.*

DEFAULTED AND TERMINATION OF YOUR PARENTAL
RIGHTS GRANTED.

Clerk's Papers (CP) at 11.

The mother had been represented by lawyer Cathy Busha during the dependency but according to Ms. Brown, the mother informed her when served "that she would hire another attorney to represent her" and "was trying to procure other legal representation." Report of Proceedings (RP) (July 30, 2015) at 7-8.

The mother did not appear for the October 23 hearing. Ms. Busha, however, was present at court that day. It was only after the mother's case was called and the court noted the mother's absence on the record that Ms. Busha addressed the court. She said:

> MS. BUSHA: Your Honor, I've been representing [the mother]—
> the dependency for quite a long time. She has been in contact with me.
> I'm not sure why she's not here today.
> THE COURT: Oh.
> MS. BUSHA: However, I can appear—her behalf—and we can set dates for the termination. I know she does not want her parental rights terminated—. We had been working towards a guardianship and that fell through—
> THE COURT: Oh.
> MS. BUSHA: —(inaudible) with that.
> So I would ask that there not be a default today. I—(inaudible) I'm willing to represent her, and—maybe we can work on dates for the trial.

RP (Oct. 23, 2014) at 3-4.

Invited to respond, Jennifer Dixon, DSHS's lawyer told the court, "I don't think there was an affirmative request for counsel or any indication that she has asked Ms. Busha to represent her today." *Id.* at 4. Ms. Busha did not disagree. Ms. Dixon

3

continued that she would like the court to enter an order of default, knowing that would "give Ms. Busha an opportunity to make a motion to set the default aside later if that situation changes." *Id.* The court also heard from Nancy Graham, the guardian ad litem, who said that E.R.D. was doing well in her foster home and was inquiring about whether she would be adopted, and that she "hope[d] we can get this resolved." *Id.* at 5.

Ms. Dixon proposed to set the termination trial over to the next docket (November 13) and the court agreed, telling Ms. Busha that "hopefully that will—Ms. Busha, you'll be able to—have contact with your client, and take whatever steps are necessary." *Id.*

For reasons that are unexplained, trial was initially set, instead, for January 21, 2015. The Notice of Trial Date reflects the superior court administrator's certification that it was mailed or hand delivered to the parties, including the mother, on October 29, 2014. The record includes an envelope addressed to the mother at an Ellensburg apartment address, bearing a stamp that states "RETURN TO SENDER[,] MOVED LEFT NO ADDRESS[,] UNABLE TO FORWARD." CP at 16. The mother would later submit a declaration explaining that:

> At the time of the dependency and termination trial, I was having a great deal of difficulty in my life and was homeless for some months. I was on a downhill spiral. I did not see some of my mail nor had a phone sometimes.

CP at 43-44.

An order of default was not entered until November 5, 2014.

4

On November 20, the trial date was reset to December 11, 2014. The proof of service on the notice resetting hearing states that a copy of the document was served by U.S. Mail on all parties or their counsel of record. Nothing in the record indicates that a lawyer had appeared on behalf of the mother. Trial proceeded on December 11. The mother did not appear, nor did anyone on her behalf.

Ms. Brown was questioned during the termination trial by Ms. Dixon and by the guardian ad litem. Ms. Brown testified that during the dependency, she had provided the mother with multiple substance abuse treatment referrals, a referral for a psychological parenting capacity evaluation, and joint mental health sessions with E.R.D. She testified that while the mother completed a chemical dependency program on January 28, 2013, she then failed to complete the recommended intensive inpatient chemical dependency treatment or co-occurring mental health treatment. She testified that the mother did not provide consistent urine samples and in 2013 she had multiple positive UAs for both methamphetamine and marijuana.

Ms. Brown testified that communication with the mother had been very difficult and visitation between the mother and E.R.D. had been disruptive and erratic. She testified that the mother was homeless and did not demonstrate any change in behavior during the dependency. She expressed her opinion that it would take at least two years for the mother to remedy her parenting deficiencies. She also expressed the view that

termination was in E.R.D.'s best interest and recommended terminating the parental relationship and allowing E.R.D. to be adopted by her foster parents.

At the conclusion of the one day trial, the court announced its decision to terminate the mother's parental rights. It entered amended findings of fact, conclusions of law, and an order of termination on December 18.

The mother had her last visit with E.R.D. that day, and Ms. Brown delivered to her a copy of the order terminating her parental rights.

Three months later, on March 18, 2015, the mother filed a motion to set aside the default. Her declaration in support stated among other matters that she "was unaware of the date of the termination trial court hearing," that she did "not honestly recall anyone serving [her] with papers for the court date," and that "[a]fter learning of this news, [she] was extremely devastated that there was a trial and [she] was not in attendance and that [her] parental rights had been terminated." CP at 43. She said she had been clean and sober since sometime in November 2014, had called the Office of Public Defense after learning of the order of termination, and they had arranged for Ms. Busha to represent her in moving to set aside the default.

DSHS opposed the motion, representing that

> A substantial hardship would be suffered by the child if the order terminating the mother's parental rights was vacated. The child has a right to permanency, and at age 10 years old, is aware that her mother's parental rights have been terminated and that she is eligible to be adopted at this time. The most recent ISSP [Individual Service and Safety Plan] filed in

6

the dependency action explains that "[E.R.D.] is aware that she is eligible for adoption and has voiced excitement about having a permanent home."

CP at 51.

The mother's motion was continued a couple of times but was ultimately heard on July 23. That day, Ms. Busha filed a declaration from the mother stating that she had missed court in November and December 2014 "due to not being notified by [DSHS]." CP at 60. Given the conflicting testimony of the social worker and the mother as to whether the mother had been served, the court concluded that the factual dispute needed to be resolved and notified the parties that "[d]ue to the fact that it is difficult to make credibility determinations from a review of written declarations, the court will take brief testimony from the social worker and the mother on this important issue within the next week or so." CP at 64.

The hearing took place a week later, on July 30. Ms. Brown testified to having served the mother on August 21, 2014, and to the conversation that took place between them. She testified that when she arrived at the visitation center and encountered both E.R.D. and her mother, Ms. Brown asked to speak with the mother privately in the hallway, and served her with the papers at that time. DSHS offered, as an exhibit, a case note Ms. Brown entered the next morning, which the court later described as

> documenting that at 5:15 PM on August 21, 2014, [Ms. Brown] had personally served [the mother] with a copy of the notice, summons and petition for termination of parent-child relationship and also verbally

7

advised her that the hearing on that petition was scheduled for October 23, 2014.

CP at 82.

The mother also testified. She recalled seeing Ms. Brown on August 21, but testified that Ms. Brown handed her a sealed envelope that the mother opened later, after leaving the visit, and that it only contained court papers relating to an upcoming permanency plan hearing. According to the mother, when handed the envelope, she asked Ms. Brown if she knew what was inside it and Ms. Brown answered no. RP (July 30, 2015) at 16. She testified that if the papers had related to a termination trial, rather than permanency planning, she "would have been there." *Id.*

On cross-examination, DSHS offered an August 21, 2014 case note from the visitation supervisor, Rylee McCauley, and asked the mother to read into the record the portion of the case note that addressed what happened after Ms. Brown arrived. The mother read the following from Ms. McCauley's case note:

> Maura arrived at 4:57. [E.R.D.] opened up her coat. [E.R.D.] asked what her surprise was that Maura gave [her mother]. [Mother] said it wasn't a surprise, just papers. [Mother] asked if I knew what the papers were. I said no, and I shouldn't know. She said a whole other . . . trial. I said we could talk about it another time.

*Id.* at 18.

At the conclusion of the hearing, the trial court announced it would not vacate the default, observing that the mother admitted receiving an envelope from Ms. Brown at the

8

time of the alleged service and, as to the envelope's contents, it "finds the social worker's credibility greater than [the mother's] on that particular issue." *Id.* at 23.

On August 26, the mother filed a notice of appeal. Because no order denying the motion to vacate had been entered, this court scheduled a hearing to determine appealability. The parties thereafter secured a written order denying the motion, which was entered by the trial court on October 7, 2015, and the appeal of that order was allowed to proceed.

## ANALYSIS

### *Only two of eight assigned errors are properly before us*

The mother makes eight assignments of error on appeal. Most are to trial court decisions made on and before December 18, 2014, as to which her appeal is not timely. A party may appeal a decision terminating all of a person's parental rights with respect to a child, RAP 2.2(a)(6), but with exceptions not applicable here, a notice of appeal must be filed in the trial court within 30 days. RAP 5.2(b). Any appeal of the trial court's December 18, 2014 judgment terminating the mother's parental rights, or any ruling that prejudicially affected that judgment (such as the order of default) was required to be filed by January 17, 2015. The mother did not file a notice of appeal in the trial court until August 26, 2015.

A CR 60 motion to vacate a judgment is not one of the posttrial motions that extends the time for filing an appeal under RAP 5.2(e). "An appeal from the denial of a

9

CR 60(b) motion is not a substitute for an appeal and is limited to the propriety of the denial, not the impropriety of the underlying order." *In re Dependency of J.M.R.*, 160 Wn. App. 929, 938-39 n.4 (2011); *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 435, 378 P.3d 183 (2016) ("When reviewing a trial court's denial of a motion to vacate, we review only the trial court's decision . . . we do not address arguments not made before the trial court."); 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.4 author's cmt. 6, at 195 (8th ed. 2014) (observing that a ruling on a motion to vacate is appealable, but the appeal brings up only the question of whether the trial court abused its discretion in denying the motion to vacate, not the merits of the judgment itself).

The rules are clear and the case law is well settled. Moreover, the untimeliness of appealing anything *other* than denial of the motion to vacate was essentially conceded by the mother when a commissioner of this court reviewed appealability in the fall of 2015. In a brief filed with this court, the mother argued that the trial court's order denying her motion to vacate was appealable of right "pursuant to RAP 2.2(a)(10)."[1] Appellant's Mem. on Appealability at 2-3. A commissioner of this court then determined that "the mother may appeal as a matter of right the Oct. 7, 2015 Order." Comm'r's Ruling, *In re*

---

[1] RAP 2.2(a)(10) provides that among the only superior court decisions from which a party may appeal is "[a]n order granting or denying a motion to vacate a judgment."

*Parental Rights to E.R.D.*, No. 33762-6-III, at 1 (Wash. Ct. App. Oct. 21, 2015). No motion to modify that ruling was filed.

For these reasons, only two of the mother's assignments of error are properly before the court: the error she assigns to the trial court's October 7, 2015 order denying her motion to set aside default and order of termination, and her assignment of error to a single finding within that order.

The only finding in the October 7, 2015 order to which the mother assigns error is the following portion of finding 2.3:

> The mother did not appear for the hearing on October 23, 2014[,] even though she had been properly served; therefore, she was in default.

Br. of Appellant at 2. She has not assigned error to the court's finding 2.1, that "[t]he mother's testimony was not credible," or to any others. CP at 83. The court's remaining findings are verities on appeal. RAP 10.3(g); *In re Interest of Mahaney*, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

### *Applicable law and standard of review*

A motion for default may be made when a party against whom a judgment is sought has failed to appear. CR 55(a)(1). A party who does not appear in the action before the motion for default is made is not entitled to notice of the motion. CR 55(a)(3). For this purpose, an action to permanently terminate parental rights is a new proceeding and not an extension of the dependency action, so appearance in the dependency action

11

does not entitle a party to notice of a motion for default in the termination proceeding. *In re Welfare of S.I.*, 184 Wn. App. 531, 540, 337 P.3d 1114 (2014), *review denied*, 183 Wn.2d 1002 (2015).

A court may set aside a default order "[f]or good cause shown and upon such terms as [it] deems just." CR 55(c)(1). To establish good cause under CR 55, a party may demonstrate excusable neglect and due diligence. *S.I.*, 184 Wn. App. at 544 (quoting *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999). "A party moving to vacate a default order is not required to demonstrate a meritorious defense to establish good cause," but "if a party offers evidence of a meritorious defense, a trial court more likely abuses its discretion should it fail to vacate a default order." *Id.*

"[A] parent's failure to respond to notices and summons of a proceeding to terminate parental rights, in itself, does not preclude the State from obtaining a judgment permanently terminating that parent's right to the custody and care of his or her child." *In re Dependency of C.R.B.*, 62 Wn. App. 608, 616, 814 P.2d 1197 (1991). "[A] child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact his or her attorney." *Id.*

We review denial of a motion to vacate an order of default for an abuse of discretion. *S.I.*, 184 Wn. App. at 543-44. A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.

12

Even where an order of default has been entered, before a judgment terminating parental rights can be entered, the court must have a meaningful hearing on the merits of the case in accordance with statutory requirements for termination. *C.R.B.*, 62 Wn. App. at 616. Statutory procedural requirements must be satisfied, and factual findings made must be sufficiently specific to permit meaningful review. It is not enough for a caseworker to provide testimony parroting the language of the statutory requirements.

Under CR 60, the court may vacate an order or judgment when it results from procedural irregularity or excusable neglect. CR 60(b)(1). As with denial of a motion to vacate an order of default, we review denial of a motion to vacate a judgment for abuse of discretion. *In re Welfare of M.G.*, 148 Wn. App. 781, 792, 201 P.3d 354 (2009).

### Bases for motion

The mother's motion to vacate the order of default and judgment did not identify its legal basis or the grounds on which she relied. *See* CP at 40-45. Giving her the benefit of the doubt, she arguably advanced three bases for relief in the trial court: that she was not served with notice of the termination trial, that she appeared at the October 23 hearing through Cathy Busha, and excusable neglect. *See id.*[2] All three contentions were addressed by the trial court. Its finding 2.3 includes a finding that she did not

---

[2] Had she chosen to do so, the mother might have been able to advance arguments reflected in her assignments of error 3-8 in some form when she moved to vacate. We express no view on that score. But under even the most generous reading of her motion papers and oral argument, none of those errors were asserted below. We decline to consider them for the first time on appeal. *See* RAP 2.5(a).

appear for the hearing on October 23 and that she had been properly served. Finding 2.8 includes the trial court's finding that no evidence was presented that would authorize the court to set aside the judgment pursuant to CR 60(b)(1) (authorizing vacating on grounds including inadvertence, surprise, and excusable neglect).

Our appellate review of a trial court's findings is limited to whether they are supported by substantial evidence. *In re Welfare of Ca.R.*, 191 Wn. App. 601, 608, 365 P.3d 186 (2015). Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true. *Id.* at 608-09 (quoting *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). We do not reweigh evidence or reassess witness credibility.

*Proper service.* Ms. Brown's testimony is sufficient, standing alone, to support the trial court's finding that the mother was properly served. It is further supported by her own and Ms. McCauley's contemporaneous documentation. The only contrary testimony—the mother's—was found by the court not to be credible. Substantial evidence supports the trial court's finding that the mother was properly served.

*Appearance in the proceeding.* The mother argues, conclusorily, that "Ms. Busha appeared for [the mother]" on October 23, 2014. Br. of Appellant at 6. The only evidence she cites are Ms. Busha's statements to the court on that occasion, including Ms. Busha's statements that "I *can* appear—her behalf" and "I'm *willing* to represent

14

her." *Id.* (emphasis added) (citing RP (Oct. 23, 2014) at 3-4). But the crux of the

existence of an attorney-client relationship is whether the client believes or intends that

such a relation exists. *State ex rel. Slusser v. Billet*, 52 Wn. App. 561, 564, 762 P.2d 350

(1988) (citing *In re McGlothen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)). Ms. Busha's

"willingness" to appear on October 23, 2014, tells us nothing about the mother's belief or

intention.

Among the evidence that supports the trial court's finding that the mother did not

appear through Ms. Busha on October 23 is the following:

- Maura Brown's testimony on July 30, 2015, that when served, the mother told Ms. Brown she anticipated retaining different counsel;

- The notice and summons for the termination trial, stating, "YOU ARE NOT REPRESENTED BY A LAWYER IN THIS TERMINATION PROCEEDING EVEN IF YOU WERE APPOINTED A LAWYER IN THE PRIOR DEPENDENCY CASE. YOU MUST REAPPLY FOR APPOINTMENT OF A LAWYER IN THIS CASE." CP at 11;

- Ms. Dixon's earlier cited expression of doubt on October 23, 2014, that Ms. Busha represented the mother, which Ms. Busha did not contest;

- The fact that the trial court encouraged Ms. Busha to contact the mother about further representation but Ms. Busha did not then appear in the termination proceeding until contacted by the Office of Public Defense the following spring; and

- The fact that nowhere in Ms. Busha's materials filed with the trial court has she ever asserted or offered evidence that she was in fact representing the mother on October 23, 2014.

Our dissenting colleague identifies three statements made by the Department's

lawyer or the court during the October 23 hearing that he argues treated Ms. Busha as the

15

mother's lawyer; ergo, Ms. Busha *was* the mother's lawyer. First, he points out that the
Department's lawyer claimed the Department had served the termination petition
personally on the mother and "provided her counsel with a courtesy copy of the petition
as well as the notice and summons." RP (Oct. 23, 2014) at 3. The Department does not
say, nor do the clerk's papers reveal, what counsel was given a courtesy copy. As far as
we know, the Department provides courtesy copies of termination paperwork to lawyers
representing parents in a dependency, knowing that no one will be misled since the notice
and summons states that the lawyer will not represent the parent in the termination
proceeding unless reappointed for that purpose. *See* CP at 11.

Second, the dissent points to the fact that the Department's lawyer stated that Ms.
Busha could later make a motion to set aside a default. The lawyer's entire (and clear)
argument to the court was that Ms. Busha could not act for the mother that day because
she had not been appointed, but would have "an opportunity to make a motion to set the
default aside later *if the situation changes.*" RP (Oct. 23, 2014) at 4 (emphasis added).
The statement is consistent with the fact that Ms. Busha did not represent the mother at
the time of the hearing.

Third, the dissent points to the trial court's comment, after a November 13 date
was proposed for continuing the hearing, that "hopefully that will—Ms. Busha, you'll be
able to—have contact with your client, and take whatever steps are necessary." RP (Oct.
23, 2014) at 5. It is manifest from the record of the October 23 hearing as a whole that

16

the trial court did not view Ms. Busha as currently representing the mother. Reasonably read, the trial court's statement simply reflected the fact that Ms. Busha was willing and had offered to take on the mother's representation and the trial court hoped that she would be in contact with the mother.

We do not reweigh evidence. The evidence that supports the trial court's finding that the mother did not appear through Ms. Busha is far more substantial than these three pieces of evidence relied on by the dissent.

*Excusable neglect.* The mother's only other argument made in moving to vacate the default and judgment was that she had been homeless during the period leading up to the termination trial, did not always see her mail, lacked a phone, and was on a "downhill spiral." CP at 43-44. The trial court found that no evidence was presented that would support vacating the judgment on the basis of excusable neglect. We bear in mind the trial court's finding in December 2014 that E.R.D. had not lived with her mother since July 2012 and was benefitting physically, emotionally, and educationally from the stability and nurturing she was receiving from the foster family that hoped to adopt her. CP at 37. Particularly given E.R.D.'s needs, the mother's excuses—attributable to issues for which she had been offered services for over 18 months—are not "excusable" neglect. *Cf. Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 407, 196 P.3d 711 (2008) (even neglect of a case due to a diagnosed medical disability is not excusable neglect). Her admission that she was in a nonfunctional downhill spiral into November 2014

17

reveals that she probably could not have defended against termination at the December 2014 trial, reducing the likelihood that the trial court abused its discretion in denying the motion to vacate. *S.I.*, 184 Wn. App. at 544.[3]

The trial court's findings are supported by substantial evidence. We find no abuse of discretion in its denial of the motion to vacate.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Pennell, J.

_____

[3] The mother's declaration and argument offered before the July 30, 2015 hearing maintained that she was clean and sober beginning in November 2014. But at the July 30 hearing she admitted that even after November 2014, she "had one relapse in treatment and [that] was dealt with." RP (July 30, 2015) at 15.

No. 33762-6-III

FEARING, C.J. — (dissenting) I conclude that the mother, Penelope Deaton, appeared in the parental termination action through her attorney, Cathy Busha. Therefore, the State needed to have given Ms. Busha notice before entering a default order of termination. Failure to give notice renders the order void. I respectfully dissent and would reverse the trial court's refusal to vacate the default order.

## FACTS

This appeal concerns the parental rights of Penelope Deaton to Esther Deaton. Both names are fictitious. Esther Deaton was born on June 11, 2004. Penelope Deaton adopted Esther, when Esther was a baby. Penelope's sister gave birth to Esther. The pertinent facts of this appeal surround events during the termination proceeding rather than Penelope Deaton's parenting history.

On March 26, 2013, the juvenile court entered an agreed order of dependency for Esther Deaton, at which time Esther entered foster care. Penelope Deaton's identified parenting deficiencies then included untreated substance abuse and untreated mental health issues.

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

PROCEDURE

On July 24, 2014, the State of Washington filed a petition for termination of the parent-child relationship between Penelope and Esther Deaton. On August 11, 2014, the State filed additional, but conflicting, pleadings. The State filed a note for trial setting, which read, in relevant part:

> PLEASE TAKE NOTE that this case will be brought on the trial setting docket for assignment for a trial date on the *27th day of October 2014*, at 9:00 a.m. A list of your available trial dates must be filed with the court before the setting date.

Clerk's Papers (CP) at 7 (emphasis added). The State also filed a notice-first set termination hearing, which declared, in pertinent part:

> A first set termination hearing before the court will be heard at the Kittitas County Superior Court, Juvenile Department, located at 205 West 5th Avenue, Ellensburg, WA 98926, on the *23rd day of October, 2014*, at the hour of 9:00 a.m.

CP at 9 (emphasis added). Finally, the State filed a notice and summons/order, which stated:

> **STATE OF WASHINGTON TO:**
> Name: [Penelope Deaton], mother
>
> **I. Notice of Hearing**
>
> 1.1 You are notified that a petition, a copy of which is attached, was filed with this court alleging that the above-named child is dependent and a permanent termination of the parent-child relationship should occur. A termination petition, if granted, will result in permanent loss of your parental rights.
> **Notice**: If your child is placed in out-of-home care, you may be held

2

responsible for the support of the child.

1.2 The court has scheduled a fact-finding hearing on ***October 23, 2014, at 9:00 am***, at Kittitas County Superior Court, Juvenile Department, located at 205 West 5th Avenue, Ellensburg, WA 98926.

1.3 The purpose of the fact finding hearing is to hear and consider evidence on the petition. You should be present at this hearing.

1.4 If you do not appear ***the court may enter an order in your absence*** permanently terminating your parental rights.

## II. Summons/Order to Appear

2.1 ***You are summoned and required*** to appear at the hearing on the date, time, and place set forth above.

. . . .

**Notice: Violation of this Order or Summons is Subject to a Proceeding for Contempt of Court Pursuant to RCW 13.34.070.**

## III. Advice of Rights

3.1 You have important legal rights, and you must take steps to protect your interest.

3.2 You have the right to a fact-finding hearing before a judge. At the hearing, you have the right to speak on your own behalf, to introduce evidence, to examine witnesses, and to receive a decision based solely on the evidence presented to the judge. You should attend this hearing.

3.3 You have the right to be represented by a lawyer. If you cannot afford a lawyer you have the right to request that the court appoint a lawyer to represent you at public expense. If you qualify, a lawyer will be appointed by the court to represent you.

3.4 Your lawyer can look at the social and legal files in your case, talk to the supervising agency or other agencies, tell you about the law, help you understand your rights and help you at hearings.

3.5 If you wish to have a lawyer appointed, contact Superior Court Clerk at 509-962-7531 and ask for the Dependency Unit Clerk or appear at the Kittitas County Superior Court Clerk's Office, Kittitas County Superior Court, Juvenile Department, located at 205 West 5th Avenue, Ellensburg, WA 98926.

3.6 YOU ARE <u>NOT</u> REPRESENTED BY A LAWYER IN THIS TERMINATION PROCEEDING EVEN IF YOU WERE APPOINTED A

> LAWYER IN THE PRIOR DEPENDENCY CASE. YOU MUST
> REAPPLY FOR APPOINTMENT OF A LAWYER IN THIS CASE. IF
> YOU OR A LAWYER ON YOUR BEHALF DOES NOT APPEAR IN
> THIS CASE, YOU WILL BE DEFAULTED AND TERMINATION OF
> YOUR PARENTAL RIGHTS GRANTED.
> You may call Ellensburg DCFS for more information about your
> child. The agency's name and telephone numbers are:
> Ellensburg DCFS Office, (509) 925-0440

CP at 10-11 (capitalization, underscoring, and boldface print in original). Observe that

the note for trial setting established a hearing date of October 27, 2014, for the purpose of

scheduling a later trial date. The notice-first set termination hearing and the notice and

summons/order established a termination trial of October 23, 2014.

In a return of service, Maura Brown, Penelope Deaton's social worker, averred

that she served Deaton, on August 21, 2014, at 5:15 p.m., with a petition for termination

of parent-child relationship and "a notice and summons/order, a copy of which is

attached." CP at 24. No copy of any document is attached to the return. Penelope

Deaton contends no one served her with paperwork for a termination hearing.

Penelope Deaton did not appear at the October 23, 2014 hearing. Cathy Busha,

Deaton's dependency attorney, was present. We do not know if Ms. Busha was present

in part to assist Penelope Deaton or if her presence was fortuitous. At the beginning of

the hearing, the State of Washington's counsel remarked:

> MS. DIXON: . . . The Department personally served Ms. [Deaton]
> with a copy of the petition and notice of filing on August 21st, and
> provided *her counsel* with a courtesy copy of the petition as well as the
> notice and summons.

Report of Proceedings (RP) (Oct. 23, 2014) at 3 (emphasis added). The State's attorney did not identify the counsel for Penelope Deaton to whom the State provided a copy of the petition, notice, and summons, but we do not know of any other attorney who ever represented Deaton other than Cathy Busha.

During the October 23 hearing, the following colloquy occurred between Cathy Busha and the court:

> MS. BUSHA: Your Honor, I've been representing [P.D.]—the dependency for quite a long time. She has been in contact with me. I'm not sure why she's not here today.
> THE COURT: Oh.
> MS. BUSHA: However, I can appear—her behalf—and we can set dates for the termination. I know she does not want her parental rights terminated —. We had been working towards a guardianship and that fell through—
> THE COURT: Oh.
> MS. BUSHA:—(inaudible) with that.
> So I would ask that there not be a default today. I—(inaudible) I'm willing to represent her, and—maybe we can work on dates for the trial.
> THE COURT: Uh-huh. Okay.

RP (Oct. 23, 2014) at 3-4. We do not know if the trial court's remark of "okay" meant that the court appointed Cathy Busha to represent Penelope Deaton. Later comments by the trial court show that his comment was not approval of Ms. Busha's request that the court refrain from entering a default against Deaton.

During the October 23 hearing, the trial court next listened to the State's attorney:

> MS. DIXON: Your Honor, I don't think there was an affirmative request for counsel or any indication that she has asked Ms. Busha to

5

represent her today. We are asking for the order of default given that we have a termination trial was already set for today I'm asking (inaudible) your Honor, in regards to Ms. [Deaton] so that would give Ms. Busha an opportunity to make a motion to set the default aside later if that situation changes. But today I'm asking that the court—
THE COURT: I'll do that. All right.

RP (Oct. 23, 2014) at 4.

After hearing from Esther Deaton's guardian ad litem, the trial court next asked

the State's counsel:

THE COURT: . . . And—do you have a date in mind, Ms. Dixon?
MS. DIXON: Your Honor, if we can just set it over to the next docket—
THE COURT: Okay.
MS. DIXON:—11/13.
THE COURT: Sounds good. And hopefully that will—Ms. Busha, you'll be able to—have contact with *your client*, and take whatever steps are necessary.
Okay?
MS. DIXON: Thank you, your Honor.

RP (Oct. 23, 2014) at 5 (emphasis added). Cathy Busha did not answer the court's

question of "okay?" The State took the position that Ms. Busha was not Penelope

Deaton's attorney, yet the State probably referred to Ms. Busha as Deaton's "counsel"

and the trial court referred to Deaton as Ms. Busha's "client."

The October 23 colloquy suggests that the court scheduled a trial for November

13. Nevertheless, on October 29, 2014, the superior court administrator sent a notice of

trial date, scheduling the trial on the termination petition to begin January 21, 2015. The

notice indicated that the administrator sent a copy to Penelope Deaton, but no copy to

6

Cathy Busha. The postal service returned to the court administrator the notice to Deaton on the basis that Deaton had moved and left no forwarding address. On November 5, 2014, the trial court entered a written order adjudging Penelope Deaton to be in default.

On November 21, 2014, the State of Washington's counsel filed a notice resetting the termination petition trial for December 11, 2014. We do not know why the State's counsel sent the notice of trial, when the court administrator sent the earlier notice. The State did not send a copy of the new trial setting to Penelope Deaton or Cathy Busha.

On December 11, 2014, the trial court conducted a termination trial. Penelope Deaton and Cathy Busha were absent. We do not know how long the hearing lasted. The transcript of testimony continues for sixteen pages.

At the conclusion of the trial, the court entered findings of fact, conclusions of law, and an order of termination. On December 18, 2014, the trial court entered amended findings of fact, conclusions of law, and order terminating the parent-child relationship. Pertinent to this appeal the trial court found:

> 1.9 All services ordered under RCW 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided to the parents in an express and understandable manner. . . .
> 1.10 The mother's parental deficiencies have not been corrected. . . .
> 1.11 There is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future. . . .
> 1.12 The mother is currently unfit to parent because she continues to view herself and [Esther Deaton] as "victims" of the Department and has failed to remediate parental deficiencies in order to provide [Esther Deaton]

7

with a safe and secure home environment. . . .

    1.13 Continuation of the parent-child relationship clearly diminishes the child's prospects for integration into a stable and permanent home. . . .

    1.14 Based on the foregoing findings of fact, termination of parental rights is in [Esther Deaton's] best interests. . . .

CP at 27-30.

Penelope Deaton last visited with her daughter Esther on December 18, 2015. According to Penelope, the visit ended early. Maura Brown then handed Penelope an envelope and told Penelope that the court had terminated her parental rights. Penelope declared that she would appeal the termination. Brown responded that the time had expired for an appeal.

Penelope Deaton thereafter contacted the local Office of Public Defense in order to secure an attorney to assist her in the termination case. The office assigned Cathy Busha to represent Deaton.

On March 18, 2015, Penelope Deaton filed a motion to set aside the default termination order. Cathy Busha signed the motion as counsel for Deaton. In support of the motion, Ms. Busha signed a declaration, in which she averred that Penelope called her and said she was unaware of the date of any termination trial. In support of her motion, Penelope Deaton declared that she lacked knowledge of any termination trial court hearing.

In support of her motion to vacate the default order, Penelope Deaton also swore:

I have made many changes in my life. At the time of the

8

dependency and termination trial, I was having a great deal of difficulty in my life and was homeless for some months. I was on a downhill spiral. I did not see some of my mail nor had a phone sometimes. I am now staying with a roommate who is my sober and support person. He has helped may [sic] people who have addiction problems.

When I learned that my parental rights had been terminated and that there had been a court hearing, I contacted the Office of Public Defense and spoke with Amelia Watson. I could not afford an attorney and am considered indigent at this time. I asked if Ms. Busha could represent me again. The[y] indicated that they would call her. I then received a call from Ms. Busha's office in order to set up an appointment.

I have been clean and sober since November, 2014. I am attending group sessions and drug treatment at ADDS. I have no excuses for my behavior and I am taking full responsibility for my actions. I do not blame anyone except myself. I wish to demonstrate to the court and DSHS [department of social and health services] that I am able to remain sober and do the right things for my daughter.

CP at 43-44. Deaton filed no memorandum of law in support of her motion to vacate.

On July 30, 2015, the trial court conducted a testimonial hearing in order to resolve the dispute between Penelope Deaton and Maura Brown as to whether Brown served Deaton, on August 21, 2014, with the termination petition and hearing notice. During the hearing, Maura Brown testified that, on August 21, she went to the Caring Hearts Visitation Facility to see Penelope Deaton. She went to the facility, because she had tried to contact Deaton elsewhere with no success, and Brown knew that Deaton would visit with her daughter at the facility on August 21. Brown lacked a current address for Deaton. According to Brown, she served Deaton with a notice and summons for a termination trial at the facility. She also told Deaton of the date for the trial and encouraged Deaton to contact her attorney. According to Brown, Deaton acted cordially

9

and stated that she sought to "procure other legal representation." RP (July 30, 2015) at 8. The following morning, Maura Brown wrote a note in her case file confirming the interaction with Deaton.

Penelope Deaton testified, during the evidentiary hearing, that, on August 21, 2014, Maura Brown handed her a sealed envelope. Deaton did not then open the envelope because she did not want Esther to see court papers. Deaton opened the envelope when she left the visitation facility and entered her car. The envelope contained paperwork for a permanency planning hearing. Deaton added that she would have attended any termination hearing and objected to termination of her parental rights.

After the completion of testimony on July 30, 2015, Cathy Busha, counsel for Penelope Deaton argued, in part:

> I was here when I saw—for the termination trial when I saw her name on the docket. I had not been appointed. At that point I did ask Your Honor for a continuance because I was surprised that she was not here, because I know her love for her daughter and I know she always has been in front of this court saying I want you to hear my side. It has been many, many times.
> So I would ask that this default be set aside. The court has authority to do that, so that Ms. [Deaton] can present her side of the story. I mean, this is termination of parental rights. This is big. So she is just asking for due process. She's asking for a trial, and I believe I think she has the right to do so, Your Honor.

RP (July 30, 2015) at 21-22.

At the conclusion of the July 30 evidentiary hearing, the trial court commented that it found the testimony of Maura Brown credible and that it concluded Brown served

10

Penelope Deaton with termination proceedings pleadings. The trial court denied Deaton's motion to vacate the default judgment. The court did not sign a written order denying the motion until October 7, 2015.

On August 26, 2015, Penelope Deaton filed a notice of appeal of the order regarding termination of the parent-child relationship entered on October 23, 2014, by default. The notice of appeal noted that Deaton filed a motion to set aside the default, but the trial court confirmed the default judgment. Because Deaton filed the notice of appeal before entry of the written order denying the motion to vacate, this court directed the parties to address whether Deaton could appeal. Our court commissioner ruled that:

> This Court has determined that the mother may appeal as a matter of right the October 7, 2015 Order. *See* RAP 2.2(a)(10). Accordingly,
> IT IS ORDERED, the matter is appealable as a matter of right.

Commissioner's Ruling, *In re Termination of: E.R.D.*, No. 33762-6-III, at 1 (Wash. Ct. App. Oct. 21, 2015).

## LAW AND ANALYSIS

On appeal, Penelope Deaton assigns error to the trial court's refusal to set aside the default order and the default order itself. She contends that the trial court mistakenly failed to appoint Cathy Busha as her counsel at the October 23, 2014 hearing, erroneously agreed, on October 23, to enter a default when her counsel tried to appear on her behalf, incorrectly signed an order of default on November 5, 2014, when the State failed to give five days' notice to her counsel of the entry of the order, mistakenly refused to grant her

11

motion to vacate when the order of default was void, and wrongly refused to vacate the default order on the basis that insufficient evidence supported the termination of her parental rights. These arguments implicate a parent's right to appointed counsel during a parental termination proceeding. The argument that Cathy Busha appeared on Deaton's behalf overlaps with the contention that the trial court should have appointed Ms. Busha as counsel. I agree with all but the last of Penelope Deaton's assignments of error.

The State of Washington erects two procedural obstacles to this court reaching the merits of Penelope Deaton's arguments. Normally an opinion would first address those procedural arguments. Nevertheless, because the resolution of the merits dictates the response to the State's appellate barriers, I address the merits first.

*Issue 1: Did Cathy Busha appear on behalf of Penelope Deaton at the October 23, 2014 hearing?*

*Answer 1: Yes.*

Cathy Busha told the trial court, during the October 23 hearing, that she represented Penelope Deaton in the dependency action, that she wished to appear on Deaton's behalf, that Deaton did not wish her parental rights terminated, that the court should set a date for trial, and that the trial court should not enter a default order. The State responded that it was not aware that Deaton wished Ms. Busha to represent her at the October 23 hearing. The trial court did not expressly rule that Cathy Busha had not or could not appear on behalf of Penelope Deaton. Nevertheless, steps taken at the October

12

hearing and later suggest that the trial court did not consider Ms. Busha to have appeared on behalf of Deaton. The State proceeded as if no appearance occurred.

The first sentence of RCW 4.28.210 declares:

> A defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance.

The statute's list of actions constituting an appearance is not exclusive and informal acts can constitute appearance. *City of Des Moines v. Personal Property Identified as $81,231 in U.S. Currency*, 87 Wn. App. 689, 696, 943 P.2d 669 (1997). Because default judgments are disfavored, the concept of "appearance" is to be construed broadly when a party moves to vacate a default order. *Colacurcio v. Burger*, 110 Wn. App. 488, 494-95, 41 P.3d 506 (2002); *City of Des Moines v. Personal Property Identified as $81,231 in United States Currency*, 87 Wn. App. at 696.

Because of the nature of a parental termination proceeding, a court should abhor a default and construe an appearance broadly to the extreme. A parent holds a fundamental liberty interest, protected by the Fourteenth Amendment to the United States Constitution, in the care, custody and control of a child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). Courts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children. *In re*

13

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

*Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). Therefore, terminating parental rights is one of the severest of state actions and implicates fundamental interests. *In re Welfare of J.M.*, 130 Wn. App. 912, 921, 125 P.3d 245 (2005). The child also has an interest in preventing the erroneous termination of its relationship with her natural parents. *Santosky v. Kramer*, 455 U.S. at 765.

A party may appear through an attorney. *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721-22, 349 P.2d 1073 (1960). Typically, the appearance is by an attorney. The State commented, at the October 23 hearing, that Cathy Busha lacked authority to appear on behalf of Penelope Deaton. Nevertheless, an attorney who appears in court is presumed to be authorized to represent the client, and the attorney need not provide proof of authorization. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL 130380, 2 N.E.3d 1052, 1074, 377 Ill. Dec 771; *Shields v. QHG of Springdale, Inc.*, 2009 Ark. 88, 302 S.W.3d 598, 602; *Kingvision Pay-Per-View, Ltd. v. Ayers*, 886 So. 2d 45, 54 (Ala. 2003); *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 446, 98 Cal. Rptr. 2d 193 (2000); *Gray v. First National Bank of Chicago*, 388 Ill. 124, 129, 57 N.E.2d 363 (1944). This court has twice held that an attorney, who lacked authority to represent a client because he was not licensed in Washington State or held a conflict of interest, did not negate an appearance on behalf of the client by the attorney. *Servatron, Inc. v. Intelligent Wireless Products, Inc.*, 186 Wn. App. 666, 676, 346 P.3d 831 (2015); *Sacotte Construction, Inc. v. National Fire & Marine Insurance Co.*, 143 Wn. App. 410, 416, 177 P.3d 1147 (2008).

14

The attorney appointed to represent a parent in a dependency action is generally appointed to represent the parent in a parental termination proceeding. *In re Welfare of S.I.*, 184 Wn. App. 531, 559, 337 P.3d 1114 (2014), *review denied*, 183 Wn.2d 1002, 349 P.3d 857 (2015) (Fearing, J. dissenting). For this reason alone, Cathy Busha should have been allowed to appear on behalf of Penelope Deaton.

One might emphasize that Cathy Busha, on October 23, 2014, did not employ the words "I am appearing on behalf of Penelope Deaton," but instead remarked that she "can appear." By emphasizing the language used, one might argue there was no appearance, only an expression of an ability to appear. Such a conclusion, however, promotes form over substance. Ms. Busha specifically expressed a desire to appear and stated that Deaton wished to oppose the termination. Again, Ms. Busha was Deaton's counsel in the dependency action.

At the hearing on the motion to vacate the default order, Maura Brown testified that Penelope Deaton told her, on August 21, 2014, that she would hire an attorney, other than Cathy Busha. Nevertheless, this testimony was not known by the trial court during the October 23 hearing. When Deaton learned of the default order, she went to the Office of Public Defense since she was indigent and could not hire an attorney on her own. Ms. Busha thereafter represented her. Had Deaton sought an attorney on October 23, she likely would have requested and received Cathy Busha.

The State equates this case to *Welfare of S.I.*, in which this court found the lack of

15

an appearance. Nevertheless, *S.I.* is both factually and legally distinct. Unlike the mother in *S.I.*, Penelope Deaton appeared, through Cathy Busha, at the initial termination hearing. In addition, Deaton is not arguing, as did S.I.'s mother, that her many appearances during the dependency constitute an appearance.

*In re Dependency of C.R.B.*, 62 Wn. App. 608, 814 P.2d 1197 (1991) controls this appeal. In *C.R.B.*, the State petitioned to take C.R.B. from his mother on August 28, 1989, when he was three days old. On January 31, 1990, the State filed a petition for termination of parental rights. Concurrently the State filed a "Certification in Support of Notice by Publication." *C.R.B.*, 62 Wn. App. at 611. The trial court set the termination hearing for May 9, 1990. The mother failed to appear at that hearing. Nevertheless, her attorney Virginia Marshall appeared on her behalf and informed the court that she had not had contact with the mother since February of 1990, at which time the mother expressed an interest in having the child returned to her care and her willingness to participate in court-ordered services. The court held that, since the mother communicated her intention of contesting the termination to her attorney only two months earlier, and her attorney contested the action at the hearing, the mother "appeared" under CR 55(a)(1).

Comments by the State and by the trial court, during the October 23 hearing, conflict with the State's position that Cathy Busha could not appear for Penelope Deaton and conflict with any trial court ruling that Ms. Busha could not appear. The State's counsel stated that the State had delivered a copy of the termination petition to Deaton's

16

counsel. The only person ever identified as Deaton's counsel in the course of the dependency and termination actions was Cathy Busha. The State should not be free to represent to the court that Ms. Busha serves as Deaton's counsel and then deny the existence of an attorney-client relationship between the two. During the October 23 hearing, the State's attorney also mentioned that "Ms. Busha [could] . . . make a motion to set the default aside later if that situation changes." RP (Oct. 23, 2014) at 4. This comment presupposes that Cathy Busha is counsel for Penelope Deaton.

When scheduling a hearing date, the trial court commented: "And hopefully that will—Ms. Busha, you'll be able to—have contact with *your client*, and take whatever steps are necessary." RP (Oct. 23, 2014) at 5 (emphasis added). This comment reflects that the trial court, in addition to the State, considered Ms. Busha to be Penelope Deaton's counsel. Thus, Ms. Busha should have been able to appear for Deaton.

Being a party's lawsuit attorney is similar to being pregnant. One is either pregnant or not pregnant. One is either a party's lawsuit attorney or not the party's attorney. The trial court and the State should not have considered Penelope Deaton the client of Cathy Busha for some purposes, but not for the purpose of Ms. Busha entering an appearance on behalf of Deaton.

This writer dissented in *In re Welfare of S.I.*, 184 Wn. App. 531 (2014) and wrote that an appearance in a dependency action should constitute an appearance in the related termination proceeding. For this reason alone, the trial court in this appeal should have

17

concluded that Penelope Deaton's appearance in her dependency action also constituted an appearance in the termination proceeding.

*Issue 2: Whether the trial court should have appointed Cathy Busha as counsel for Penelope Deaton, during the October 23, 2014 hearing, when Busha requested to appear and represent Deaton?*

*Answer 2: Yes.*

Penelope Deaton contends she was denied her statutory and constitutional right to legal counsel. She argues that Cathy Busha's appearance on her behalf triggered her right under RCW 13.34.090(2) to counsel in the termination action. The State responds that Deaton did not have the right to counsel because she failed to ask for counsel before the October 23 hearing. I agree with Penelope Deaton.

Terminating parental rights is one of the severest of state actions and implicates fundamental interests. *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996). When the state moves irrevocably to sever the parent-child bond, the rights of parents to protection from unwarranted usurpation by the state are guaranteed by the Fourteenth Amendment. *M.L.B. v. S.L.J.*, 519 U.S. at 116. When the government seeks to terminate parental rights, the state must ensure that judicial proceedings are fundamentally fair. *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 33-34, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). In Washington, fundamental fairness requires that the state appoint counsel for indigent parents. *In re Welfare of J.M.*,

18

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

130 Wn. App. at 921 (2005)

In Washington, the constitutional right to counsel attaches to indigent parents in termination proceedings by way of RCW 13.34.090(2). *In re Dependency of Grove*, 127 Wn.2d 221, 232, 897 P.2d 1252 (1995). This right derives from the due process guaranties of article I, section 3 of the Washington Constitution as well as the Fourteenth Amendment. *In re Welfare of Luscier*, 84 Wn.2d 135, 138, 524 P.2d 906 (1974). RCW 13.34.090 declares, in part:

> (2) At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, *if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.*

(Emphasis added.)

The State argues that Penelope Deaton never appeared nor requested counsel be appointed. I have already discussed that Deaton appeared. Deaton appeared through Cathy Busha and thus satisfied the first prong of RCW 13.34.090.

Turning to the second prong, RCW 10.101.020 controls the determination of indigence. The statute states, in part:

> A determination of indigency shall be made for all persons wishing the appointment of counsel in criminal, juvenile, involuntary commitment, and dependency cases.

RCW 10.101.020(1). This determination must occur at either the initial contact or the

19

earliest possible time allowed by the circumstances. RCW 10.101.020(3).

> If a determination of eligibility cannot be made before the time when the first services are to be rendered, the court shall appoint an attorney on a provisional basis.

RCW 10.101.020(4).

We have no evidence about Penelope Deaton's financial ability to obtain counsel other than knowledge that Deaton received appointed counsel in the dependency action. Deaton argues that, because counsel had been appointed before, counsel would be appointed again. Such may have occurred. Regardless, because Deaton appeared, albeit through Cathy Busha, the trial court was required to appoint provisional counsel pursuant to RCW 10.101.020(4). Therefore, the trial court denied Deaton's constitutional and statutory right to counsel.

The State suggests that Cathy Busha would face an ethical dilemma, if appointed on October 23 to represent Penelope Deaton, because Ms. Busha did not know what position Deaton wished to take regarding the termination petition. The record shows otherwise. Deaton had told Ms. Busha that Deaton wished to fight the termination.

The State relies on *In re the Dependency of A.G.*, 93 Wn. App. 268, 968 P.2d 424 (1998) and *In re the Welfare of Parzino*, 22 Wn. App. 88, 587 P.2d 201 (1978) for support of the argument that Cathy Busha would have faced an ethical challenge if appointed at the October 23 hearing. Nevertheless, in *A.G.*, the ethical dilemma arose at the termination hearing on the merits, not the initial hearing. The mother had not told the

20

attorney she wished to resist the termination petition. The court allowed the attorney to represent the mother until the termination trial, despite a lack of communication between attorney and client. *Welfare of Parzino* holds the same dissimilarities as *Dependency of A.G.*

The State's analysis of an ethical dilemma would render the appointment of a defense attorney for an indigent accused difficult, if not impossible. The trial court appoints the attorney before the client tells the attorney whether the client wishes to resist the criminal charges. The client usually discloses his wishes only after the attorney later meets with the client and discusses the case. Similarly, the trial court should have appointed Cathy Busha as the attorney for Penelope Deaton. Ms. Busha could then have attempted to communicate with Deaton and confirmed Deaton's desires. If Deaton failed to communicate with Ms. Busha, Ms. Busha could have withdrawn at a later date.

*Issue 3: Whether the trial court should have vacated the default order that terminated Penelope Deaton's parental rights?*

*Answer 3: Yes.*

The deprivation of counsel throughout the termination petition process resulted in Penelope Deaton defaulting and her parental rights being terminated without any defense. The trial court eventually signed a default order and conducted a termination trial without notice to Deaton's counsel, Cathy Busha, who had sought to appear on Deaton's behalf. Because of the lack of notice, the default order should have been vacated on Deaton's

21

motion.

Under CR 55(a)(3), if a party has "appeared" before a motion for default has been filed, that party is entitled to notice of the motion before the trial court may enter a valid default order. *Smith v. Arnold*, 127 Wn. App. 98, 103, 110 P.3d 257 (2005). Consequently, if a defendant has appeared but not given proper notice prior to entry of the order of default, the defendant is entitled to vacation of the default judgment as a matter of right. *Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954); *Professional Marine Co. v. Those Certain Underwriters at Lloyd's*, 118 Wn. App. 694, 708, 77 P.3d 658 (2003); *Colacurcio v. Burger*, 110 Wn. App. at 497 (2002); *In re Marriage of Daley*, 77 Wn. App. 29, 31, 888 P.2d 1194 (1994); *Shreve v. Chamberlin*, 66 Wn. App. 728, 731, 832 P.2d 1355 (1992). If the default order is void, the court need not decide whether the motion to vacate is brought within a reasonable time, and whether the defendant has a defense to the claim. *Colacurcio v. Burger*, 110 Wn. App. at 497; *Leen v. Demopolis*, 62 Wn. App. 473, 477-78, 815 P.2d 269 (1991). The court has a nondiscretionary duty to vacate a void judgment, and judgment must be vacated regardless of the lapse of time. *In re Dependency of A.G.*, 93 Wn. App. at 276 (1998); *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323, 877 P.2d 724 (1994).

Default judgments are disfavored because it is the policy of the law that controversies be determined on the merits rather than by default. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979); *Dlouhy v. Dlouhy*, 55 Wn.2d at

22

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

721 (1960); *Colacurcio*, 110 Wn. App. at 494. The fundamental guiding principle

> should be whether or not justice is being done. Justice will not be
> done if hurried defaults are allowed any more than if continuing delays are
> permitted. But justice might, at times, require a default or a delay. What is
> just and proper must be determined by the facts of each case, not by a hard
> and fast rule applicable to all situations regardless of the outcome.

*Griggs*, 92 Wn.2d at 582 (quoting *Widiucus v. Sw. Elec. Coop., Inc.*, 26 Ill. App. 2d 102,

109, 167 N.E.2d 799 (1960)).

The majority comments that we review the trial court's decision for abuse of

discretion. Consistent with this comment, under many, if not most, circumstances, the

decision whether to vacate a default judgment is within the trial court's sound discretion.

*Little v. King*, 160 Wn.2d 696, 709, 161 P.3d 345 (2007); *Griggs v. Averbeck Realty*, 92

Wn.2d at 582; *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978). Nevertheless,

a court has a nondiscretionary duty to vacate a void judgment. *Allstate Ins. Co. v. Khani*,

75 Wn. App. at 323 (1994); *Leen v. Demopolis*, 62 Wn. App. at 478 (1991); *In re*

*Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988).

During the October 23, 2014, hearing, Cathy Busha heard the trial court schedule a

termination trial for November 13, 2014. Still Ms. Busha, according to the court, had no

right to appear at the hearing, so such notice held no impact. Just as important, the State,

without notice to Ms. Busha, changed the trial date. Because of a lack of notice to

Penelope Deaton and her counsel, the trial court held no discretion but to vacate the

default order of termination of parental rights.

23

The State emphasizes that, during the October 23 hearing, the trial court commented to Cathy Busha that, before any later hearing, she "will—Ms. Busha, you'll be able to—have contact with *your client*, and take whatever steps are necessary. Okay?" RP (Oct. 23, 2014) at 5 (emphasis added). The State may suggest that the trial court's comment cures any defects in later entering a default order of termination. Nevertheless, the trial court did not directly instruct Busha to attempt to locate Penelope Deaton. Cathy Busha did not answer the court's question. Despite the trial court's referring to Penelope Deaton as Ms. Busha's client, the trial court had refused to let Ms. Busha appear for Deaton. We have no evidence that Ms. Busha sought to locate Deaton, and Ms. Busha would hold no reason to seek the location since no attorney-client relationship had been established.

The State writes that "[i]t [the trial court] declined to sign the [default] order on October 23, 2014." Resp't's Br. at 12. From this, the State implies that the trial court wanted to give more time for someone to locate Penelope Deaton before entering a default order. The record does not support the assertion that the trial court "declined" to sign any default order on October 23. To the contrary, the State, during the hearing, asked for an order of default, and the trial court responded: "I'll do that." RP (Oct. 23, 2014) at 4. The State, on October 23, never suggested any delay in presentation of an order of default in order to accommodate Deaton. Instead, the State added that Deaton could seek to vacate the default order at a later date. For all we know, the delay in

24

signing the default order until November 5 was the result of a delay in paperwork.

The State also writes that:

> Additionally, the trial court held two substantive hearings on the mother's motion to vacate: one on July 23, 2015 to address the mother's motion, and another one on July 30, 2015 to specifically determine whether she had been properly served with a copy of the termination petition and notice and summons. *See* RP (Jul. 23, 2015) at 7-13; *see* RP (Jul. 30, 2015) at 2-23. The mother was afforded notice and a meaningful hearing, both on the merits of the termination petition and on the mother's motion to vacate; her due process rights were not violated.

Resp't's Br. at 35-36. This passage conveys the false impression that the trial court again reviewed the merits of the termination petition, with Penelope Deaton present and with Deaton granted the opportunity to challenge the evidence against her, on July 23 and 30. Although Deaton's counsel mentioned that Deaton had changed her behavior, the court did not conduct any hearing on the merits. The judge only addressed whether the default order should be vacated.

I do not base my dissent on confusion in the pleadings served on Penelope Deaton. I comment, however, that the note for trial setting served on Deaton established a hearing date of October 27, 2014, for the purpose of scheduling a later trial date. The notice-first set termination hearing and the notice and summons/order established a termination trial of October 23, 2014. The reader of the pleadings would face confusion as to the date to appear in court.

*Issue 4: Whether this appeals court may review the propriety of the entry of the*

*default order?*

*Answer 4: Yes, but whether the court can review the default order is immaterial. Penelope Deaton also appealed the denial of her motion to vacate and this denial must be reversed.*

As previously noted, the State constructs several obstacles to this court reaching the merits of Penelope Deaton's argument that her constitutional rights were denied when the court entered an order of default. First, the State argues that the only order this appellate court may review is the order denying the motion to vacate the default judgment. According to the State, Deaton failed to timely appeal the earlier default order, and, thus, this court may not review the order of default. I disagree.

The State relies on *Bjurstrom v. Campbell*, 27 Wn. App. 449, 618 P.2d 533 (1980), in which this court held that an appeal from denial of a motion to vacate a default judgment is limited to the propriety of the denial not the impropriety of the underlying judgment. This court's majority cites other decisions for the same rule. *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 435, 378 P.3d 183 (2016); *In re Dependency of J.M.R.*, 160 Wn. App. 929, 938-39 n.4, 249 P.3d 193, *review granted in part*, 172 Wn.2d 1017, 262 P.3d 64 (2011). This rule has no application in our appeal because Penelope Deaton did not limit her appeal to the order denying her motion to vacate. In all three earlier decisions, the appellant only appealed the order denying the motion to vacate. The decisions do not preclude the appellant from appealing both an order denying a motion to

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

vacate and a previous order entered by the trial court. No rule or decision precludes an appellant from appealing other orders in addition to an order denying a motion to vacate a default order. Any such rule would be unfair and could preclude this court from addressing an error in the trial court.

Penelope Deaton's notice of appeal expressly challenges the entry of the default order in October 2014. In her motion for accelerated review, she assigns error to the failure of the trial court to appoint her counsel, the failure of the State to provide her counsel five days' notice before entering a default, and the entry of the default order. In her notice of appeal, she also impliedly sought review of the order denying her motion to vacate when she mentioned the later order in her appeal notice. She assigns error, in her motion, to the trial court's failure to vacate the default order.

The majority impliedly concludes that Penelope Deaton may not challenge the November 2014 termination order by default because our court commissioner's ruling on appealability included the language "the mother may appeal as a matter of right the October 7, 2015 Order [denying vacation of default]." Majority at 10-11. Nevertheless, the court commissioner did not rule that Deaton could not challenge any other order, or that a challenge to the order denying the motion to vacate did not include a challenge to the default order. The court commissioner's ruling came in the context of determining appealability of the case as a whole, not in the context of what decisions Deaton could appeal.

27

Penelope Deaton timely appealed the order of default entered on October 23, 2014. A party need not file a notice of appeal within thirty days of every appealable order or judgment but may instead await the final decision in the case. *Fox v. Sunmaster Products, Inc.*, 115 Wn.2d 498, 505, 798 P.2d 808 (1990). If a timely notice of appeal is filed from a final decision, the appellate court will review prior orders and judgments, even those which were immediately appealable, if they prejudicially affect the final judgment. *Fox v. Sunmaster Products, Inc.*, 115 Wn.2d at 505. It makes no sense to mandate an immediate appeal from the earlier decision because to do so would only encourage multiple appeals. *Franz v. Lance*, 119 Wn.2d 780, 781, 836 P.2d 832 (1992). Penelope Deaton's timely appeal of the denial of the motion to vacate the default order of termination rendered timely her appeal of the default order.

In the end, the dispute over whether Penelope Deaton may appeal the entry of the default order lacks any relevance. The State does not contend that Deaton may not appeal the denial of Deaton's motion to vacate the default order. Ample grounds exist to hold that the trial court erred when denying the motion to vacate.

*Issue 5: Whether Penelope Deaton may raise on appeal the arguments that Cathy Busha appeared on her behalf and the State denied her constitutional right to an attorney, when Deaton did not raise those contentions during the litigation of her motion to vacate the default order?*

*Answer 5: Yes, because the arguments entail lack of jurisdiction and manifest*

28

*constitutional error*.

The State may complain that Penelope Deaton did not raise below, during her motion to vacate, her argument that she had made an appearance and that the trial court should have appointed her counsel when Cathy Busha spoke on her behalf. The record is not clear as to whether Deaton raised the contention below. Her major argument was that she had not been served with process. She filed no brief in support of her motion. Nevertheless, her counsel, during the motion to vacate hearing, remarked that, during the October 23, 2014 hearing, she sought a continuance of any attempt to enter a default and Deaton, by her motion to vacate, sought due process.

Regardless, of whether Penelope Deaton raised her salient arguments at the time of the motion to vacate, we should still entertain the arguments. As shown previously, the arguments concern well established rules that, as a matter of due process, she is entitled to appointment of counsel and the default judgment should not have been entered without notice to Deaton through counsel. Thus, her contentions, if new, constitute manifest constitutional error and defeat the trial court's jurisdiction.

RAP 2.5(a) reads:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

RAP 2.5(a) allows an appellant to raise for the first time "manifest error affecting a

29

No. 33762-6-III
*In re the Welfare of E.R.D.* (dissent)

constitutional right" and "lack of trial court jurisdiction." Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

Whether a party received notice of a default hearing is a question of due process which is of constitutional magnitude. *In re C.R.B.*, 62 Wn. App. at 614-15 (1991). Under CR 55(a)(3) and CR 55(f)(1), a trial court acts without authority when it purports to enter a default judgment without notice against a party who has previously appeared. *Shreve v. Chamberlin*, 66 Wn. App. at 731 (1992). A trial court's lack of jurisdiction may be raised for the first time on appeal. *In re Estate of Alsup*, 181 Wn. App. 856, 868, 327 P.3d 1266 (2014).

The majority relies on the rule that the reviewing court will not entertain an argument in support of a motion to vacate a default judgment that was not raised before the trial court. Majority at 13 n.2. This rule does not apply, however, to a claim for first time on appeal that the trial court lacked jurisdiction or to issues affecting fundamental constitutional rights. *State v. Santos*, 104 Wn.2d 142, 145-46, 702 P.2d 1179 (1985).

_____
Fearing, C.J.

30