# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Parenting and Support of: | No. 46104-8-II |
| C.T. | |
| Child. | |
| ANDRE LOUIS YOUNG, | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| CHERRY KAY THOMAS, | |
| Appellant. | |

MELNICK, J. — Cherry Kay Thomas appeals from the trial court's denial of her motion to vacate a permanent parenting plan that it entered after she did not appear for trial. She argues that the trial court abused its discretion by denying the motion to vacate the final order under CR 60(b)(1) when (1) her attorney filed a notice of intent to withdraw four days before trial and did not serve her; (2) the trial court entered a permanent parenting plan without sending proper notice of the trial date to her; (3) she did not receive notice of a default judgment; and (4) the trial court erred in not obtaining more evidence at trial before entering the permanent parenting plan. We reverse, vacate the order, and remand for a trial on the merits.

FACTS

C.T. was born on March 9, 2010 to Andre Young and Thomas. Thomas is C.T.'s primary caretaker.

On May 31, 2013, Young filed a petition to establish residential schedule/parenting plan child support. On the same date, the trial court filed and sent a case scheduling order setting trial for February 10, 2014. The order does not specify to whom it was sent. Thomas filed a proposed parenting plan on June 12. On July 2, the trial court held a hearing and issued a temporary order granting Young visitation with C.T. two days a week, without any overnight visitation, and ordered the parties to schedule mediation to attempt to agree on a parenting plan.

On December 19, the trial court reassigned the case to a different judge and mailed the notice of the reassignment to Doris Walkins, Thomas's attorney of record at the time. On January 16, 2014, the trial court filed a pretrial order describing the requirements for trial and sent it to Walkins.

On February 6, Walkins filed a notice of intent to withdraw. The notice stated Walkins's withdrawal would be effective on the date of filing and contained the trial date: February 10, 2014. Walkins swore under penalty of perjury that she personally served a copy of her withdrawal to the attorneys and parties on February 6.

On February 10, neither Thomas nor Walkins appeared for trial. The trial court stated that it received

> a notice of intent to withdraw submitted by Cherry Thomas' lawyer, but it was just submitted on February 6th, and the Court is not likely to let her withdraw from the case at this juncture. The problem is, based on this notice, I expect Ms. Thomas— well, Ms. Thomas should still be here in any event. . . . Even without a lawyer, the respondent still should be here.[1]

---

[1] After this comment, the trial court did not mention Walkins's withdrawal until the motions to stay and vacate were filed later that month.

2

Report of Proceedings (RP) at 3-4. The trial court continued the trial to February 14, hand-delivered notice of the trial continuance to Young, and mailed the notice to Thomas, but not Walkins.

On February 14, Thomas and Walkins again failed to appear for trial. After placing Young under oath, the trial court asked Young what he would like the parenting plan to include. The court repeatedly asked Young about each item of the proposed parenting plan and if he still wanted what he listed in his proposed plan. The trial court stated for the record "I have reviewed JIS information as to both parents here." RP at 7. After receiving the information, the court entered a final order for a permanent parenting plan, the same as Young had proposed. The trial court entered findings of fact and conclusions of law on the petition.

On February 20, Thomas and her new counsel, Heather Swann, filed a motion for an order to stay the final parenting plan. On the same day, Thomas also filed a motion to vacate the final order and a motion for an order to show cause why Thomas's motion to vacate should not be granted. In support of her motions, Thomas submitted a declaration to the trial court that she did not know her trial date was February 10. This statement contradicted the declarations submitted by Walkins and Young in response to the motion to vacate. Young stated he spoke with Thomas about the trial date. On February 21, the trial court granted Thomas's motion for an order to stay.

On March 7, the trial court heard the motion to vacate the final parenting plan. Walkins submitted a declaration and admitted that she intended to file the notice of intent to withdraw in October 2013, but due to an oversight by her office it did not get filed. Walkins stated that, as a courtesy, she sent an e-mail to Thomas on December 4, 2013 and answered Thomas's questions, but that she had already withdrawn from the case. Nonetheless, she continued to communicate with Thomas about the case. Walkins stated that she did not send Thomas a copy of the notice of

3

intent to withdraw on February 6, 2014 because she considered it to be "a formality of what she and I both already knew to be reality—in hindsight, I should have emailed a copy to her." Clerk's Papers (CP) at 132.

Thomas filed a declaration stating she was unaware Walkins withdrew prior to February 18, 2014. While Walkins was the attorney of record, all proceedings were directed to be sent to Thomas through Walkins's office. In her motion, Thomas argued that irregularities at trial warranted vacating the parenting plan including the improper withdrawal by her attorney and the lack of proper notice about the continued trial date. Thomas argued that the parenting plan was not in C.T.'s best interests because he had never stayed with Young overnight and the plan provided for week long stays.

Young also stated that he spoke with Thomas about the continuance on February 11. The trial court considered the declarations and Young's criminal history. The trial court ultimately determined that Thomas's statement was not credible, and that she knew of the trial because Walkins explained to Thomas that February 10 was the trial date and it would proceed regardless of whether or not a guardian ad litem was appointed. The trial court stated, "I can understand that Ms. Thomas may have some issues with her former attorney, but that's not before this [c]ourt to decide." CP at 170. The trial court denied Thomas's motion to vacate the final order, reasoning that based on the sworn statements and the evidence of record, that it

> believe[d] that she knew about the 10th and she didn't come.
> I further find that it is highly probable that the U.S. mail would have reached her home before the 14th. . . . I find Mr. Young's statement that he was at Ms. Thomas' home and that they specifically discussed Friday the 14th being a continued trial date, I find that statement credible.
> It's my conclusion that Ms. Thomas chose not to come to not just one trial date but two.

CP at 167-68.

Thomas filed a motion for reconsideration of the denial of the motion to vacate. The trial court denied the motion.

Thomas appeals.

ANALYSIS

I.    DENIAL OF MOTION TO VACATE

Thomas argues that the trial court abused its discretion when it denied her motion to vacate the permanent parenting plan when she did not appear for trial because her attorney improperly withdrew, she did not receive proper notice of the continuance, and she did not receive notice of default, all irregularities that satisfy CR 60(b)(1).

A.    Standards of Review

We review a trial court's denial of a motion to vacate a judgment under CR 60(b) for an abuse of discretion. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). To determine that the trial court abused its discretion, we must find that the "'exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons.'" *Mitchell*, 153 Wn. App. 821 (quoting *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). Therefore, we may overturn the trial court's decision only if the decision "'rests on facts unsupported in the record or was reached by applying the wrong legal standard'" or even when using the correct legal standard, the trial court "'adopt[ed] a view that no reasonable person would take'" or "'arriv[ed] at a decision 'outside the range of acceptable choices.'" *Mitchell*, 153 Wn. App. at 822 (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

When reviewing a trial court's denial of a motion to vacate, we review only the trial court's decision. *Bjurston v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 553 (1980). In addition, because a CR 60(b) motion "is addressed to the [trial court's] sound discretion," we do not address arguments not made before the trial court. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013); *In re Marriage of Wherley*, 34 Wn. App. 344, 348, 661 P.2d 155 (1983).

We review a trial court's interpretation of a civil rule de novo. *Westberg v. All–Purpose Structures, Inc.*, 86 Wn. App. 405, 409, 936 P.2d 1175 (1997). "[J]ust as the construction of a statute is a matter of law requiring de novo review, so is the interpretation of a court rule." *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 809, 947 P.2d 721 (1997).

B.    The Trial Court Abused Its Discretion

Thomas argues that the trial court abused its discretion in denying her motion to vacate the final order of the permanent parenting plan because there were irregularities in the proceedings that caused her absence from the trial and which resulted in a final order and judgment entered against her. We agree that there were irregularities in the proceedings that justify relief and that the trial court abused its discretion in denying the motion to vacate.

The vacation of a judgment under CR 60(b) is within the trial court's discretion. *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978). We overturn the trial court "only if it plainly appears that it has abused that discretion." *Wallis*, 89 Wn.2d at 543.

Under CR 60(b), a trial court may "relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order; . . . (11) Any other reason justifying relief from the operation of the judgment."

An irregularity, within the meaning of this rule, has been defined as the want of adherence to some prescribed rule or mode of proceeding; and it consists either in the omitting to do something that is necessary for the due and orderly conducting of a suit, or in doing it in an unreasonable time or improper manner.

*Wallis*, 89 Wn.2d at 543.

Here, the trial court failed to require Walkins to comply with CR 71 when she attempted to withdraw as Thomas's attorney of record prior to ten days after Walkins filed her notice of intent to withdraw. As explained below, it created an irregularity in the proceedings that justified relief from the final order.

In addition, the trial court failed to provide proper notice of the new trial date by not conmplying with CR 6(a), which created another irregularity in the proceedings.

Further, a successful motion to vacate requires that the moving party show:

(1) substantial evidence supports at least a prima facie defense to the claim asserted by the opposing party; (2) the moving party's failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after notice of the default judgment; and (4) the opposing party will not suffer substantial hardship if the default judgment is vacated.

*Topliff v. Chicago Ins. Co.*, 130 Wn. App. 301, 308, 122 P.3d 922 (2005). "'These factors are interdependent; thus, the requisite proof that needs to be shown on any one factor depends on the degree of proof made on each of the other factors.'" *Hous. Auth. of Grant County v. Newbigging*, 105 Wn. App. 178, 186, 19 P.3d 1081 (2001) (quoting *Norton v. Brown*, 99 Wn. App. 118, 124, 992 P.2d 1019 (1999).

Analyzing each of the factors, we find that the trial court abused its discretion in denying the motion to vacate. As to the first factor, substantial evidence existed against Young's claim for more custodial time with C.T. because Thomas was C.T.'s primary caretaker. Thomas is able to

present a prima facie defense against Young's proposed parenting plan and in support for her own proposed parenting plan.

As to the second factor, Thomas's failure to appear for trial was the result of mistake or inadvertence, and is excusable neglect because the trial court created irregularities in the proceedings when it permitted Walkins to withdraw and gave Thomas improper notice of the continuance.

As to the third factor, upon learning that she missed the trial, Thomas immediately sought new counsel and filed the motion to vacate. Thomas stated that she was out of town from February 14 to 17, and thus, did not receive the order regarding the continuance until she returned. The motion to vacate was filed on February 20. Thomas acted with reasonable diligence after receiving notice of the entry of the final order.

Finally, as to the fourth factor, if the trial court vacated the motion, Young would not suffer a substantial hardship. He would have been in the same position he was in before the final order.

For the foregoing reasons, the trial court abused its discretion in denying Thomas's motion to vacate.

C.     The Lawyer Should Not Have Been Permitted to Withdraw

Thomas argues that the trial court erred when it failed to comply with CR 71 and permitted Walkins to withdraw as her attorney "effective immediately." Br. of Appellant at 18. She further argues that she suffered prejudice as a result. We agree.

CR 71 sets forth attorney withdrawal procedures and the effective date of the withdrawal for purposes of service. *Jones v. Home Care of Wash., Inc.*, 152 Wn. App. 674, 680-81, 216 P.3d 1106 (2009). CR 71(c)(1) states that the "attorney shall file and serve a Notice of Intent to Withdraw on all other parties in the proceeding. The notice shall specify a date when the attorney

intends to withdraw, which date shall be at least 10 days after the service of the Notice of Intent to Withdraw." In addition, CR 71(c)(2) provides that "[p]rior to service on other parties, the Notice of Intent to Withdraw shall be served on the persons represented by the withdrawing attorney or sent to them by certified mail, postage prepaid, to their last known mailing addresses. Proof of service or mailing shall be filed."

The trial court erred by allowing Walkins to withdraw on the date she filed her notice with the court and not ten days later as required by the rule. CR 71 is unambiguous. The trial court permitted Walkins to withdraw four days before the original trial date. In addition, Walkins did not file proof of service to her client and the other party. The notice contained the trial date, which showed Walkins's awareness of the upcoming trial. Further, the trial court stated "the Court is not likely to let her withdraw from the case at this juncture," yet it took no action to prevent her withdrawal and did not order her to appear for trial. RP at 3.

When CR 71 is applicable, strict compliance is unnecessary where no prejudice is shown. *Lockhart v. Greive*, 66 Wn. App. 735, 742, 834 P.2d 64 (1992). Here, there is clear prejudice to Thomas. The trial court entered a final parenting plan when there was no proof Thomas had knowledge of the trial date(s) and when her lawyer did not appear. Although Walkins received communications from the trial court on December 19, 2013 and January 16, 2014, regarding the trial date, nothing in the record demonstrates that Walkins provided this information to Thomas. Even though Thomas need not attend the trial, Walkins had a duty to be present.

On February 10, the trial court asked Young whether he would "prefer to have this matter set over until the Court can get Ms. Thomas in here and her lawyer." RP at 4. Walkins did not attend either the February 10 or the February 14 trial dates. The trial court did not send Walkins with notice of the continued trial date. We also note that if there had been compliance with CR

9

71, Walkins would have been the attorney of record until February 16, past the date of the continued trial.

D.      Notice of New Trial Date

Thomas also argues that because the trial court improperly mailed her notice of the continuance of the trial date to February 14, there is another irregularity in the proceedings that provides ground to vacate the final order.  Thomas argues that under CR 6, the trial court did not mail the order setting the new trial date in sufficient time to provide notice.  We agree.

The superior court civil rules "govern the procedure in the superior court in all suits of a civil nature."  CR 1.  CR 6(a) specifies that "[i]n computing any period of time prescribed or allowed by these rules, by the local rules of any superior court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included."

We then look at CR 5 to determine how and when service should be made.  CR 81.  CR 5(a) applies because it identifies when service is required for an order made by the court:  "Except as otherwise provided in these rules, every order required by its terms to be served, . . . and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties."[2]  "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service directly upon the party is ordered by the court."  CR 5(b)(1).  Further,

> [i]f service is made by mail, the papers shall be deposited in the post office addressed to the person on whom they are being served, with the postage prepaid. The service shall be deemed complete upon the third day following the day upon

---

[2] Pierce County Local Rules (PCLR) 3(d) and 40(d) require the court to serve, with proper notice to the parties, changes in the trial date.

which they are placed in the mail, unless the third day falls on a Saturday, Sunday or legal holiday, in which event service shall be deemed complete on the first day other than a Saturday, Sunday or legal holiday, following the third day.

CR 5(b)(2)(A).

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citations omitted).

The record does not show when the trial court mailed the order; therefore, we are unable to determine when service occurred and whether any parties or counsel received actual notice. However, even if the trial court mailed the notice on February 11, per the rules, service would not have been complete until the date trial was set to begin. Assuming the trial court mailed notice of the new trial date on February 10, a Monday, it would not have provided sufficient notice to Thomas. Per CR 5(b)(2)(A), service would be deemed complete on February 13, the day before the new trial date. Because of these problems, Thomas did not receive proper notice of the new trial date.

E.      The Trial Court Did Not Enter A Default Judgment

Thomas argues that the trial court erred in entering the final order of the permanent parenting plan, in default judgment, in violation of CR 55 because the trial court did not provide proper notice of default. The trial court took testimony on the day of trial and did not enter a default judgment. Because there was no default judgment, this argument is without merit.

11

II.    Entering Final Parenting Plan Without Seeking Out More Evidence at Trial

Thomas argues that the trial court failed to follow the statutory requirements of RCW 26.09.187 in establishing the permanent parenting plan. Thomas argues that the trial court did not weigh the factors because it did not take any substantive testimony, and therefore, the trial court's findings were based on insufficient evidence. We agree.

A.    Standard of Review

We review a trial court's decision on parenting plan provisions for an abuse of discretion. *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion if the decision rests on unreasonable or untenable grounds or it is manifestly unreasonable. *Halls*, 126 Wn. App. at 606. "A decision is manifestly unreasonable if, based on the facts and the applicable legal standard, the decision is outside the range of acceptable choices." *Halls*, 126 Wn. App. at 606.

We will not retry the facts on appeal, and will accept findings of fact as verities if they are supported by substantial evidence in the record. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). Because the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997)). Decisions regarding residential provisions must be made in the best interests of the child after considering the factors set forth in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002).

B.      The Trial Court Abused Its Discretion

A trial court is required to enter written findings of fact and conclusions of law following a bench trial. *See* CR 52(a)(1). "Where trial court has weighed evidence, appellate review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment." *Sac Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the asserted premise. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

In establishing a parenting plan, the trial court must consider the factors enumerated in RCW 26.09.187(3)(a):

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in . . . RCW 26.09.004[(2)], including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
> Factor (i) shall be given the greatest weight.

When a trial court's "written findings of fact do not clearly reflect a consideration of the statutory factors, resort can be made to the court's oral opinion." *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981); *see In re Marriage of Dalthorp*, 23 Wn. App. 904, 911-

13

12, 598 P.2d 788 (1979). In addition, "[w]hen evidence of those factors is before the court and its oral opinion and written findings reflect consideration of the statutory elements, specific findings are not required on each factor." *Murray*, 28 Wn. App. at 189; *In re Marriage of Croley*, 91 Wn.2d 288, 292, 588 P.2d 738 (1978).

Here, the trial court did not establish a parenting plan by applying the required statutory factors. Insufficient evidence supports its findings of fact. The trial court placed Young under oath, went over his proposed parenting plan with him, and repeatedly asked him "[i]s that what you still want?" and "[i]s that what you would still like?" RP at 10-12. The trial court did state "for the record I have reviewed JIS information as to both parents here." RP at 7. However, the record does not show that Young provided facts for the trial court to consider under RCW 26.09.187. Nor does the record show the trial court considered C.T.'s best interests. The handwritten portion of the findings of fact and conclusions of law the trial court entered states that "[t]he Court has reviewed JIS data as to both parents." CP at 81.

At the hearing for the motion to vacate, Thomas argued that the trial court did not take into consideration C.T.'s best interests, and insufficient evidence supported the trial court's findings. The trial court stated that it reviewed the JIS and Young's testimony and that it considered C.T.'s best interests. However, the record does not reflect any clear consideration of the statutory factors when the final order was entered, and thus, insufficient evidence supports the trial court's findings of fact and conclusions of law. Therefore, the trial court abused its discretion because its decision as to the parenting plan was made on untenable grounds and did not adequately consider if the plan was in C.T.'s best interests.

14

We reverse the trial court, vacate the final order of the permanent parenting plan, and remand for a trial on the merits.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Lee, J.