# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| CHRISTOPHER WOODWARD, | No.  53876-8-II |
| Appellant, | |
| v. | |
| JESSIE R. THOMAS, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Christopher Woodward, a self-represented litigant, appeals several orders entered in an action to modify the residential provisions of a parenting plan.[1]  N.W. is the son of Woodward and Jessie Thomas.  A 2015 parenting plan order made Woodward the primary custodial parent.  Woodward was then living with his wife, Molly.[2]  Woodward and Molly separated in December 2018 and Woodward began living with his girlfriend Shannon Sparks.  Although the procedural record is incomplete, it is clear that a trial to modify the parenting plan took place in August 2019.  At the end of the trial, the trial court instituted a major change to the parenting plan, designating Thomas as N.W.'s primary residential parent and allowing Woodward overnight visitations three weekends a month.

---

[1] Woodward appeals the August 2019 Final Order and Findings on Petition to Change a Parenting Plan, Residential Schedule or Custody Order; Parenting Plan; and Child Support Order.

[2] For clarity, we refer to Molly Woodward by her first name.  No disrespect is intended.  Molly did not file a brief in this appeal.

Woodward appeals, arguing that the trial court abused its discretion by failing to address an exhibit that was admitted into evidence, and when it approved a major change to the parenting plan, residential schedule and custody order, and child support order. Because the trial court reviewed all evidence and did not abuse its discretion, we affirm.

FACTS

This appeal comes before us with an incomplete record on one brief filed by Woodward. The record on appeal lacks documents that allow us to review the complete procedures in the court below and does not include the 2015 parenting plan and related orders. However, the facts here as gleaned from the available record are sufficient for this court to make a determination on the merits, given the standard of review.

Christopher Woodward and Jessie Thomas have a son together, N.W. In December 2015, the court entered a permanent parenting plan order. Under the 2015 parenting plan, Woodward was designated as the primary residential parent, and Thomas had visitation three weekends a month. At the time of the 2015 parenting plan, Woodward was living with his wife, Molly.

In December 2018, Woodward and Molly had a falling out and initiated divorce proceedings. Also, Woodward did not have a job. As a result, Woodward became homeless. Around that time, Woodward entered into a relationship with Shannon Sparks. On December 28, 2018, the superior court entered a restraining order against Woodward and protecting N.W. The court ordered N.W. removed from Woodward's custody and ordered N.W. to stay with either Thomas or Molly.

In early 2019, during the period of Woodward's homelessness, he and Sparks did not have permanent housing and so the couple moved in with Alysa Cloud. It is unclear from the record how long Woodward lived with Sparks and Cloud. At some point before May 2019, Woodward moved into an apartment with Sparks. It is unclear from the record whether this was the same apartment in which Woodward resided at the time of trial.

Also in early 2019, Thomas made a motion for an adequate cause decision.[3] On February 21, 2019, a superior court commissioner held an adequate cause hearing, and found adequate cause for a full hearing or trial. The commissioner entered the following findings: "1) Domestic violence in father's home involving the child. 2) [C]ontinued housing instability of father. 3) [A]llegations the child's medical and education needs ignored." Clerk's Papers (CP) at 2. The court also authorized a report from a Guardian ad Litem (GAL).

On April 11, 2019, the superior court heard motions for contempt, a restraining order, and a temporary parenting plan, presumably brought by Thomas.[4] The court found that the motion for contempt was not properly before the court but entered rulings on the other issues. The court ruled that N.W. would remain in Thomas's custody, but granted Woodward visitation once per weekend from 10:00 AM to 6:00 PM. The court also prohibited contact between N.W. and Sparks.

A GAL was appointed in May 2019. The GAL conducted an investigation and issued a report in July 2019. The scope of the investigation included possible acts of domestic violence,

---

[3] We assume the adequate cause motion was with regard to a related petition for a major modification to the 2015 parenting plan, but such a petition is not in the record on appeal.

[4] The motion is not in the record on appeal. The record contains only the resulting order.

Woodward's parenting abilities, and concerns regarding other adults in Woodward's household. It also investigated the mother's parenting abilities, N.W.'s school and medical issues, and Woodward's housing instability. In the course of the investigation, the GAL contacted N.W., Woodward and Thomas, Sparks, Molly Woodward, Thomas's boyfriend, and N.W.'s primary care providers. The GAL attempted contact with several more parties, including N.W.'s school but did not receive responses.

The GAL reported details of physical violence against N.W. by Sparks. The GAL also received information that Woodward had been physically aggressive with N.W. The GAL reported a list of concerns and history of child abuse reports against Sparks regarding her own children. The GAL also expressed concerns about the interactions between N.W. and Sparks's children. The GAL concluded there may not be adequate adult supervision in Woodward's home.

The GAL also reported that Woodward had gained employment at a medical transit company, which Woodward testified he maintained during the trial. Woodward works from 7:00 AM to 6:00 PM, Monday through Friday, although the hours varied earlier or later somewhat in mornings or afternoons.

The GAL visited the apartment Woodward and Sparks were living in during the summer of 2019. The GAL reported there were no beds or mattresses in Woodward's residence at the time of the visit. The GAL reported N.W. had concerns about Woodward's housing stability and ability to pay bills. Woodward, N.W., Sparks, and Sparks's daughter apparently lived with

Alysa Cloud for some time after Woodward moved out of his shared residence with Molly. The

GAL reported that at the time of the report Woodward had obtained his own apartment.[5]

The GAL reported that Thomas claimed Woodward did not take care of N.W.'s medical

needs or hygiene. The GAL reported Woodward would withhold food from N.W. as

punishment. The GAL reported N.W. had a number of health concerns in the past. The GAL

collected information that referrals were made in 2015 that N.W. was sleeping on a pile of

clothes in Woodward's residence and that N.W. suffered scabies and needed a root canal while

in Woodward's care. Although both parents listed the same pediatrician for N.W., that office

reported N.W. had not been seen there. Woodward admitted to the GAL that N.W. has had a

difficult time following directions and staying on task at school, which has affected N.W.'s

grades. N.W.'s school location was previously based on Woodward's residence. However,

N.W. was scheduled to change schools at the end of the school year because neither parent lived

in that school district after Woodward moved.

Both Woodward and Thomas proposed parenting plans to the GAL. Woodward

proposed a return to the 2015 plan.[6] Thomas proposed to be the primary residential parent with

Woodward having residential visits three weekends a month. The GAL recommended Thomas's

plan be implemented, and that N.W. not be allowed to stay overnight at Woodward's residence

---

[5] Again, it is unclear from the record if this is the same apartment Woodward was in at the time of trial. Given the timeframe, it appears this apartment Woodward occupied was the one with no beds or mattresses.

[6] This plan is not in our record on appeal.

so long as Sparks resides with Woodward. The GAL stressed that N.W. should have no contact with Sparks and not be left unsupervised with Sparks's children.

In June 2019, Woodward filed a motion to modify the temporary order, and requested a return to the December 2015 parenting plan. At that time, the April 11, 2019 order was still in place, which granted Thomas custody and Woodward visitation for one day each weekend. In July 2019, a superior court commissioner denied Woodward's motion.

The case went to trial on August 27, 2019. Both parties appeared pro se, and both parties testified. Seven exhibits were submitted to the trial court. The trial court admitted all seven, including the GAL report (exhibit 6) and the declaration of Kelly R. Thomas (exhibit 7).[7] As to exhibit 7, the trial court judge ruled that "[s]even will be admitted subject to the Court assessing whether it has any admissibility or weight or any evidentiary value." Verbatim Report of Proceedings (VRP) at 9. One of the admitted exhibits was an April 2019 letter from N.W.'s school stating that N.W. was improving in his schooling, apparently since he moved in with Thomas.

Woodward testified at trial that he and Sparks had broken up and she had moved out on August 12, two weeks before trial. This appeared to be new information to both Thomas and the trial court judge.

---

[7] Woodward asked the court to admit exhibit 7, claiming it was the declaration of Jessie Thomas's stepmother, Holly. The name Holly does not appear on exhibit 7, only the name "Kelly," including in the signature block. Ex. 7 at 1, 5. Woodward explained that this was an error caused by an attorney who had prepared the declaration. Jessie Thomas "objected" to its admission, stating that she did not know who Kelly was.

Although the record on appeal does not contain a petition to modify the parenting plan, for the purposes of this appeal, it does not matter. At some point in 2019, a petition was filed in the trial court seeking a major modification to the parenting plan. In August 2019, the trial court judge entered a new parenting plan. In the trial court's oral ruling, it stated that its conclusions were based on "the evidence admitted in this case." VRP at 45. The trial court judge explained that the decision was in the child's best interest. The trial court issued a final order on a parenting plan, residential schedule and custody order, and a child support order.

The final parenting plan named Thomas as the primary residential parent, with Woodward getting visitation three weekends a month, provided Sparks continues not to live with him. The plan divided holidays and school breaks between the parents. The orders also modified Woodward's child support payments. The trial court incorporated its findings into the "Findings & Conclusions" section of the final order. CP at 55-60. Paragraph 4 of the final order form language (boilerplate) reads:

> The court approves a major change to the parenting/custody order. The major change is approved because:
> •The requested change is in the children's best interest, and
> •There has been a substantial change in the children's situation or in the situation of the parent (or non-parent custodian) who did not request the major change.

CP at 58. The trial court found the change to be necessary for the same reasons as the court found in the February 2019 adequate cause hearing:

> Domestic violence in father's home involving child and father's former girlfriend. . . . Alleged housing instability of father. Allegation that child's medical and educational needs have been ignored. See report of Guardian ad Litem filed under seal.

CP at 58. The trial court also checked the box on the form which states "[t]he children's current living situation is harmful to their physical, mental, or emotional health. It would be better for the children to change the parenting/custody order." CP at 59.

Woodward appeals.

ANALYSIS

The trial court has broad discretion in developing a parenting plan. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). The trial court's discretion must be exercised in the best interests of the child and is limited by the statutory provisions of RCW 26.09.260. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 103, 74 P.3d 692 (2003). The statute "establish[es] a preference for stability in the child's living arrangements." *In re Marriage of Tomsovic*, 118 Wn. App. at 103. RCW 26.09.260(1) provides that a trial court

> shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan . . . that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child.

The trial court

> shall retain the residential schedule established by decree or parenting plan unless
> . . . .
> . . . [t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.260(2)(c).

We review a trial court's modification to a parenting plan for abuse of discretion. *In re Marriage of Raskob*, 183 Wn. App. 503, 509, 334 P.3d 30 (2014). "A trial court abuses its discretion when its decision is 'manifestly unreasonable or based upon untenable grounds or reasons.'" *In re Marriage of Raskob*, 183 Wn. App. at 509-10 (quoting *In re Marriage of*

*Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004)). We reverse a trial court's findings only if they are not supported by substantial evidence. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Evidence is deemed "substantial" when it is "'sufficient to persuade a fair-minded person of the truth of the matter asserted.'" *Marriage of Black*, 188 Wn.2d at 127 (quoting *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)). We do not reweigh the evidence or review credibility determinations to determine if we would reach a different conclusion than the trial court. *In re Marriage of McNaught*, 189 Wn. App. 545, 561, 359 P.3d 811 (2015). We are "'extremely reluctant to disturb child placement dispositions'" because the trial court "hears the evidence firsthand and has a unique opportunity to observe the witnesses." *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016) (citation omitted) (quoting *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001)).

Woodward assigns error to the trial court's decision on the final order and findings on petition to change the parenting plan and the child support order. He also argues that the trial court failed to review all the evidence. We disagree.

A.      *The Trial Court Reviewed All Evidence*

Turning first to the evidentiary issue, Woodward argues that the trial court abused its discretion by failing to address exhibit 7, the declaration of Kelly R. Thomas. The record does not support Woodward's argument and we disagree.

We do not reweigh the evidence or review credibility determinations to determine if we would reach a different conclusion than the trial court. *Marriage of McNaught*, 189 Wn. App. at 561.

Seven exhibits were submitted to the trial court. The trial court admitted all seven. As to exhibit 7, the trial court judge ruled that "[s]even will be admitted subject to the Court assessing whether it has any admissibility or weight or any evidentiary value." VRP at 9. The trial court judge noted that the court's decision was based on "the evidence admitted in this case." VRP at 45. Nothing in the record suggests the trial court ignored or improperly weighed exhibit 7 in reaching its determination. Because we do not review the weight the trial court gives evidence, we hold that the trial court did not abuse its discretion in whatever weight it assigned to the exhibit.

B.    *The Trial Court Did Not Abuse Its Discretion by Establishing the Parenting Plan.*

Woodward makes 15 assignments of error, which amount to a challenge to the entire result of the final order entered in August 2019. However, other than the evidentiary argument above, he incorporates the 14 other assignments of error into five legal challenges. We address each in turn, explaining how Woodward's argument fails for each.

1. *Presumption Against Custodial Changes*

Woodward argues that the trial court erred in approving a major change to the custody arrangements for N.W. because there is a strong presumption against custodial changes. He cites to the case of *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993), to support this argument. Although it is true there is such a presumption, Woodward's argument fails because of the trial court's broad discretion in developing a parenting plan.

There is a strong presumption against custodial changes. *In re Marriage of McDole*, 122 Wn.2d at 610. However, as the *McDole* court noted, trial courts also have broad discretion in developing a parenting plan. 122 Wn.2d at 610. We will not reverse the trial court "unless the court exercised its discretion in an untenable or manifestly unreasonable way." 122 Wn.2d at 610.

In *McDole*, the trial court took testimony from the parties and considered other evidence. 122 Wn.2d at 610-11. The trial court relied on a therapist and counselor who were familiar with the family to make its conclusions. *In re Marriage of McDole*, 122 Wn.2d at 610-11. The trial court concluded there was a substantial change in circumstances and that the placement modification was in the child's best interests. *In re Marriage of McDole*, 122 Wn.2d at 611. On appeal, the court of appeals reversed, finding the evidence did not support the trial court's conclusion. *In re Marriage of McDole*, 122 Wn.2d at 609-10. The Supreme Court reversed, reinstating the trial court's modification, holding that the Court of Appeals substituted its judgment for that of the trial court. *In re Marriage of McDole*, 122 Wn.2d at 610-11.

Here, as in *McDole*, the trial court took testimony from the parties and admitted exhibits into evidence. Just as the court in *McDole* relied on a therapist and counselor familiar with the family, the court here relied on the reporting of the GAL—who had conducted an investigation—in making its conclusions. In both cases, the trial court concluded there was a substantial change in the child's circumstances. We do not substitute our judgment for that of the trial court. We hold that the trial court acted within its discretion in modifying the parenting plan.

No. 53876-8-II

2. *Housing Instability*

Woodward argues that the trial court erred in finding that he had "alleged housing instability." Br. of Appellant at 7 (emphasis omitted). We disagree.

We reverse a trial court's findings only if they are not supported by substantial evidence. *In re Marriage of Black*, 188 Wn.2d at 127. We defer to the trial court's observation of evidence and witnesses. *In re Parenting & Support of C.T.*, 193 Wn. App. at 442.

Here, the evidence supports a finding that Woodward had housing instability. Woodward claims in his brief that he had been in housing for over six months. However, the record shows that in between December 2018 and August 2019, Woodward had become homeless, then lived with Cloud because he and Sparks did not have housing, and then moved into an apartment where there were no beds or mattresses. It is unclear from the record if Woodward had one or two different apartments after he "regained housing." Ex. 6 at 3. All told, this means that Woodward lived in at least three different locations between December 2018 and August 2019. Additionally, the GAL reported that N.W. was concerned about Woodward's housing stability and ability to pay bills. Accordingly, substantial evidence supports the trial court's finding that there were credible allegations of housing instability against Woodward.

3. *Reliance on GAL Report*

Woodward argues that the trial court's reliance on the GAL report was insufficient to support the trial court's findings because the trial court must determine the case on additional evidence. He further argues that the trial court should have ignored allegations in the GAL report. We disagree.

12

First, Woodward cites to *Voice Link Data Services, Inc. v. Datapulse*, *Inc.*, to argue that we should not consider allegations of facts without additional support in the record. 86 Wn. App. 613, 619, 937 P.2d 1158 (1997). But *Voice Link* was a contract case. 86 Wn. App. at 615. The evidentiary issue there was based on challenging the enforcement of a forum selection clause and is inapplicable to family law. 86 Wn. App. at 617-18. The standard we use here is substantial evidence. *In re Marriage of Black*, 188 Wn.2d at 127.

Here, the GAL's report was admitted into evidence without objection. Woodward cannot object to the report now. RAP 2.5(a); ER 103(a)(1). And applying the substantial evidence standard, the record supports the trial court's determination that there was "[d]omestic violence in father's home involving child and father's former girlfriend. . . . Alleged housing instability of father. Allegation that child's medical and educational needs have been ignored." CP at 58.

Turning first to "domestic violence in the father's home," the GAL reported physical violence against N.W. by Sparks. Even accepting Woodward's testimony that Sparks was no longer in his household, the GAL also reported that Woodward had been physically aggressive with N.W. The GAL further reported that Woodward withheld food from N.W. as punishment.

In addition to other evidence in the record as discussed above, the GAL report also touched on Woodward's housing instability. The GAL reported no beds or mattresses in Woodward's residence at the time of the visit. The GAL also related N.W.'s concerns about Woodward's housing stability. The GAL report also repeated the facts of Woodward's various housing locations in 2018-2019, although it noted that Woodward had obtained his own apartment.

Turning next to the finding that there were allegations the child's medical and educational needs were ignored, the GAL listed several concerns. The GAL reported that Thomas claimed Woodward did not take care of N.W.'s medical needs or hygiene. The GAL reported N.W. had a number of health concerns in the past. The GAL collected information that reports were made in 2015 that N.W. had been sleeping on a pile of clothes in Woodward's residence and that N.W. suffered scabies and needed a root canal while in Woodward's care. And the pediatrician the parents listed had not seen N.W. Woodward admitted to the GAL that N.W. had had a difficult time following directions and staying on task at school, which affected his grades. N.W.'s school location was scheduled to change at the end of the school year because neither parent lived in that school district after Woodward moved. This evidence in the GAL report directly controverts Woodward's argument that "the GAL report does not contain" allegations that N.W.'s medical and educational needs were ignored.

The above evidence in the GAL report refutes Woodward's argument that the report did not contain facts sufficient to support the trial court's findings.

*a. The GAL Report Was Not "Fatally Flawed"*

Woodward also argues that the GAL report was "fatally flawed" because the GAL did not conduct an adequate investigation under RCW 13.34.105(1)(a) or the GAL rules, GALR 2(g). Br. of Appellant at 8. We disagree.

RCW 13.34.105(1)(a) lays out the duties of the GAL, which "include but are not limited to . . . investigat[ing], collect[ing] relevant information about the child's situation, and report[ing] to the court factual information regarding the best interests of the child." GALR 2(g) expounds on this, explaining the GAL's duty to become informed about a case:

14

> A guardian ad litem shall make *reasonable efforts* to become informed about the facts of the case and to contact all parties. A guardian ad litem shall examine material information and sources of information, taking into account the positions of the parties.

(Emphasis added).

Here, the record supports that the GAL functioned within the scope of its requirements, including making "a reasonable effort to become informed about the case and contact all parties." GALR 2(g). The GAL conducted an investigation. The GAL collected information relevant to the child's situation, which included information regarding the best interests of the child. The scope of the investigation included Woodward's domestic violence or that of members of Woodward's household, Woodward's parenting abilities, and concerns regarding other adults in Woodward's household. The GAL also investigated the mother's parenting abilities, N.W.'s school and medical issues, and Woodward's housing instability. The GAL submitted the report to the court.

The GAL also made all reasonable efforts to become informed and to contact all parties. The GAL contacted Woodward and Thomas, as well as N.W., Sparks, Molly Woodward, Thomas's boyfriend, and N.W.'s primary care providers. The GAL attempted contact with several more parties, including N.W.'s school but did not receive responses. There is nothing in the record to suggest the GAL improperly examined any information or failed to account for the positions of the parties, continually referring to each as "father," "mother," or "child," respectively. Ex. 6, *passim*.

Because the GAL conducted its investigation within the scope of its governing statute and the state GAL rules, we hold that the GAL conducted an adequate investigation and the report was therefore not flawed.

15

4. *Child's Current Living Situation*

Woodward argues that the trial court erred when it found "[t]he child[]'s current living situation is harmful to their physical, mental, or emotional health. It would be better for the child[] to change the parenting/custody order." Br. of Appellant at 9. We disagree.

Woodward argues that the "current living situation" language parallels RCW 26.09.260(2)(c), which states:

> [T]he court shall retain the residential schedule established by the decree or parenting plan unless
> . . . .
> . . . [t]he child's *present environment* is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

(Emphasis added.) Br. of Appellant at 9.[8] Although the language of the final order does parallel the statute, with "current living situation" replacing "present environment," the rest of Woodward's argument fails.

Woodward bases his argument on *In re Marriage of Velickoff*, where we noted that "'[p]resent environment of the child' means the environment contemporaneous with the time of trial." 95 Wn. App. 346, 355, 968 P.2d 20 (1998). He argues that the trial court's reason for changing the custody order and other terms was predicated on the GAL report, which contained information from the months prior, when Sparks still resided with Woodward, who he testified no longer lives in his apartment.

---

[8] Woodward erroneously cites to RCW 26.09.260(1)(c), which does not exist.

But Woodward fails to read past that sentence of *Velickoff*. In the same paragraph, we went on to say that the petitioner's argument there "ignores that the trial court did not base its decision *solely* on past" events. *In re Marriage of Velickoff*, 95 Wn. App. at 355 (emphasis added). There was additional evidence before the court, besides the statements regarding Sparks in the GAL report. The trial court heard the arguments and concerns from both parties. The evidence showed issues with Woodward's own treatment of N.W., including Woodward's physical aggression toward him. Woodward works from early in the morning until evening, making school pick-ups and drop-offs and after school care a concern. There is also some question as to whether Woodward had a mattress or bed for N.W. at the time of trial. There was also the letter from N.W.'s school marking his improvement since moving in with Thomas. This is in addition to the rest of the GAL report and other evidence and testimony submitted to the court that is unrelated to Sparks. Therefore, we conclude that the trial court did not base its decision solely on past events related to Sparks.

Furthermore, it appears from Woodward's arguments that he contends the trial court granted the major modification because the court wanted Sparks and N.W. separated. The record does not support this. Indeed, although the trial court based its ruling on the GAL recommendation, it modified the parenting plan from that recommendation to give Woodward more time with N.W. based on his testimony that his relationship with Sparks was over.[9] Accordingly, we hold that the trial court did not err in making its determination on the reasons for the change to the parenting order.

---

[9] Regarding Sparks, the trial court judge stated: "I do believe the testimony given by the father supports a change in the scheduling as recommended by the guardian ad litem." VRP at 46.

### 5. *Best Interest of the Child*

Woodward argues that the trial court's conclusion that the parenting plan was made in the best interest of the child was in error. We disagree.

It is true, as Woodward argues, that we review a trial court's conclusions of law de novo. *Gormley v. Robertson*, 120 Wn. App. 31, 36, 83 P.3d 1042 (2004). But when error is assigned to a trial court's findings, we review the findings of fact to determine if they are supported by substantial evidence, and if so, if they support the conclusions of law. *Gormley*, 120 Wn. App. at 38. Where we can determine the findings of the trial court should be sustained by substantial evidence, we then may necessarily make a determination whether those findings supported the conclusions of law. *See In re Marriage of Rideout*, 150 Wn.2d 337, 350-53, 77 P.3d 1174 (2003).

Here, the trial court found that there was evidence of "[d]omestic violence in father's home involving child and father's former girlfriend. . . . Alleged housing instability of father. Allegation that child's medical and educational needs have been ignored." CP at 58. The trial court also found that "[t]he children's current living situation is harmful to their physical, mental, or emotional health. It would be better for the children to change the parenting/custody order." CP at 59.

Here, the findings of fact support the conclusions of law. We hold that the trial court did not err in approving the major change to the parenting plan and custody order. The trial court applied the best interests of the child standard in accordance with RCW 26.09.260.

18

No. 53876-8-II

The trial court reviewed all evidence and did not abuse its discretion in assigning exhibits a given weight. The trial court also did not abuse its discretion in developing the parenting plan. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

Glasgow, J.

Cruser, J.